643 So.2d 179 (1994)
Michael G. DAVIS and Claudette Gravois Davis
v.
William L. BORSKEY.
No. 92 CA 2339.
Court of Appeal of Louisiana, First Circuit.
August 22, 1994.
*181 Jerald Block, Thibodaux, for plaintiff-appellee, Michael Davis and Claudette Davis.
Grady C. Weeks, Houma, Howard P. Elliott, Jr., Baton Rouge, for defendant-1st appellant, State of LA.
Patrick C. Grace, John Kennedy, New Orleans, for defendant-2nd appellant William Borskey.
Before EDWARDS, CRAIN and LeBLANC, JJ.
LeBLANC, Judge.
Defendants, William L. Borskey, Insurance Company of North America (INA), and the State of Louisiana, appeal a judgment in favor of plaintiffs in this defamation suit. Defendants allege numerous errors, including the arguments that the elements of defamation were not established and that the trial court did not apply the proper burden of proof in rendering judgment in favor of plaintiffs. Finding these assignments of error have merit, we reverse the judgment of the trial court.[1]

FACTUAL BACKGROUND
Plaintiffs are Michael G. Davis and his wife, Claudette Gravois Davis. Mr. Davis is employed as the purchasing agent for Nicholls State University (NSU). At the time in question, defendant, William L. Borskey, was the director of the NSU student union. In February of 1989, the Office of the Inspector General (IG) instituted an investigation into various activities at NSU. Shortly thereafter, the IG's office contacted the Louisiana State Police, which began a criminal investigation parallel to the IG's investigation. NSU employees were instructed by university president, Donald Ayo, to cooperate in the joint investigation. Investigators received a tip from a NSU employee that Mr. Borskey might possess information about possible bid irregularities in the purchase of items for the 1988 NSU Family Day. Mr. Borskey was questioned by investigators, and he eventually gave them an affidavit describing a three-way telephone conversation among himself, Mr. Davis, and Mr. Tommy Gros, the vendor who was awarded the Family Day contract. This affidavit is the basis of the defamation claim against Mr. Borskey.
At the conclusion of its investigation, the IG's office prepared a final report, dated June 21, 1989, detailing its findings and conclusions, which was made available to the public, including the news media. The portion of the report dealing with the purchasing department, stated that "[t]he University Purchasing Agent [Mr. Davis] engaged in the manipulation of bids to funnel at least two purchases to a favored vendor, according to *182 evidence obtained." The report cited an affidavit from an unnamed NSU employee [the Borskey affidavit] as support for this conclusion. The report concludes that "[e]vidence exists indicating that Mr. Mike Davis, purchasing agent for the University, conspired with Mr. Tommy Gros of A.I.M. a vendor, to rig at least two bids." In addition to recommending appropriate administrative action against Mr. Davis, the report recommended that "[e]vidence should be submitted to the proper prosecutorial agency for prosecution regarding both Mr. Davis and Mr [sic] Tommy Gros." The substance of the report's statements and conclusions regarding Mr. Davis was subsequently reported in the news media.
The State Police also prepared a report, dated June 5, 1989, which also concluded that Mr. Davis conspired with Mr. Tommy Gros to rig bids. In addition to bid rigging, the report accuses Mr. Davis of malfeasance in office. The report was submitted to the Lafourche Parish District Attorney, who after conducting his own investigation, declined to bring charges against Mr. Davis.

PROCEDURAL BACKGROUND
On September 19, 1989, plaintiffs filed suit against Mr. Borskey for defamation. Mr. Borskey's insurer, INA, was an additional defendant. The State of Louisiana, Governor Buddy Roemer and Inspector General Bill Lynch, both in their official and individual capacities, and three of the state employees who conducted the investigation were later added as defendants. Additionally, a third-party demand was filed by Mr. Borskey against the State, seeking indemnification for any amount for which he might be held liable to plaintiffs.
A bifurcated trial was held; the claims against Mr. Borskey were tried by a jury, while the trial court decided the claims against the State. During trial, plaintiffs dismissed their claims, by stipulation, against all defendants individually, with the exception of Mr. Borskey. At the conclusion of the trial, a jury verdict was returned in favor of plaintiffs and against Mr. Borskey. The jury awarded damages to Mr. Davis totalling $210,000.00, consisting of $60,000.00 for mental and emotional suffering, $75,000.00 for humiliation and embarrassment, and $75,000.00 for impairment of reputation. Mrs. Davis was awarded $60,000.00 for loss of consortium. With respect to plaintiffs' claims against the State, the trial court found in favor of plaintiffs, holding the State liable in solido with Mr. Borskey and his insurer, INA. In its oral reasons for judgment, the trial court stated:
I have found that the State published a report that defamed Michael Davis. I have found that the publication was certainly to persons other than Michael Davis because it was publicized. I have found that the words and the contents of the report accuse Michael Davis of a crime. I have found that then the State with the burden of proof has failed to prove by a preponderance of the evidence that the words were true. I have also found that by the acts and omissions that I have stated that the State has failed to exculpate themselves from the presumption of malice. The issue of privilege does not apply.
In accordance with the jury's verdict and its own findings, the trial court rendered judgment against Mr. Borskey, INA and the State, in solido, in favor of Mr. Davis for $210,000.00, which was itemized as follows: mental and emotional suffering, past and future, $60,000.00; humiliation and embarrassment, past and future, $75,000.00; impairment of reputation and standing in the community, past and future, $75,000.00. Mrs. Davis was awarded $60,000.00 for loss of consortium, affection and companionship. Judgment was further rendered in favor of Mr. Borskey on his third-party demand for indemnification against the State. An appeal from this judgment was taken by Mr. Borskey and INA. The State took a separate appeal.

STATE'S APPEAL
On appeal the State alleges numerous errors by the trial court. However, since we find merit in the State's first argument that the trial court erred in not imposing the New York Times v. Sullivan burden of proof upon *183 plaintiffs, we do not reach any other assigned errors.
At trial the district court concluded that Mr. Davis was a public official by virtue of his position as purchasing agent at NSU.[2] Despite this finding, the trial court did not apply the burden of proof mandated by New York Times Company v. Sullivan for recovery in defamation suits brought by public officials. In Kidder v. Anderson, 354 So.2d 1306, 1308 (La.1978), the Louisiana Supreme Court discussed this burden of proof as follows:
A public official may not recover damages for a defamatory statement, even if false, relating to his official conduct "unless he proves that the statement was made with `actual malice'that is, with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times Company v. Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964). Moreover, the public official plaintiff must meet this burden not merely by a preponderance of the evidence, but with "clear and convincing proof." Gertz v. Robert Welch, Inc., 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974). See also New York Times Company v. Sullivan, cited above, 376 U.S. at 285-86, 84 S.Ct. at 729.
In the instant case, because it found that the IG's report[3] constituted defamation per se (since the court concluded the report accused Mr. Davis of criminal acts), the trial court shifted the burden of proof to the State to rebut the presumption of falsity and malice. Upon finding that the State did not sufficiently rebut this presumption, the trial court rendered judgment against the State. The trial court erred in doing so.
In Louisiana accusation of a crime is considered defamatory per se. Redmond v. McCool, 582 So.2d 262, 265 (La.App. 1st Cir. 1991). Generally, defamation per se creates a presumption of falsity and malice which the defendant bears the burden of rebutting. Id. However, "[t]he Constitution delimits a State's power to award damages for libel in actions brought by public officials against critics of their official conduct." New York Times, 376 U.S. at 283, 84 S.Ct. at 727. In such cases, the presumption which normally arises from defamation per se is inconsistent with constitutional requirements. New York Times, 376 U.S. at 283-284, 84 S.Ct. at 728. Rather than relying on a presumption of malice, a public official who is a plaintiff in a defamation suit bears the burden of proving the element of malice by clear and convincing evidence. New York Times, 376 U.S. at 283-286, 84 S.Ct. at 728-29; Kidder, 354 So.2d at 1308.
Since the trial court applied a presumption of malice herein rather than requiring plaintiffs to prove malice by clear and convincing evidence, we must set aside the judgment rendered against the State. See, New York Times, 376 U.S. at 284, 84 S.Ct. at 728. Rather than remanding this matter for a new trial, we will review the record independently to make a de novo determination of whether plaintiffs should prevail under the proper burden of proof. See, Rosell v. ESCO, 549 So.2d 840, 844 note 2, (La.1989); Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
*184 As noted in Kidder v. Anderson, a public official may not recover for a defamatory statement relating to his official conduct, even if false, unless he proves by clear and convincing evidence that the statement was made with actual malice or with reckless disregard for whether or not it was false. In Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 509, 111 S.Ct. 2419, 2429, 115 L.Ed.2d 447 (1991), the Supreme Court explained that actual malice should not be confused with "the concept of malice as an evil intent or a motive arising from spite or ill will". In the context of defamation, the term actual malice refers to publication of a defamatory statement with "knowledge of falsity". Id. at 510-11, 111 S.Ct. at 2430. Further, to prove reckless disregard for truth or falsity, means that the plaintiff must demonstrate that the defendant acted with a high degree of awareness as to its probable falsity. Masson, 501 U.S. at 509-10, 111 S.Ct. at 2429. Mere negligence, even gross negligence, in publishing the statement does not suffice to meet this standard. Masson, 501 U.S. at 510, 111 S.Ct. at 2429; Garrison v. Louisiana, 379 U.S. 64, 79, 85 S.Ct. 209, 218, 13 L.Ed.2d 125 (1964). See also, St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968). Reckless conduct is not measured by the standard of a reasonably prudent man, rather the proper inquiry is whether "the defendant in fact entertained serious doubts as to the truth of his publication." St. Amant, 390 U.S. at 731, 88 S.Ct. at 1325.
After an independent review of the record, we find that the evidence does not support a finding that the statements in question were made with knowledge of falsity, i.e., actual malice. In fact, the evidence reveals that the statements in the IG's report were made with a subjective belief as to their truth. We further conclude that plaintiffs failed to prove by clear and convincing evidence that the statements were made with reckless disregard of whether or not they were true.
The evidence reveals that, as well as interviewing Mr. Davis and Mr. Borskey, State investigators questioned each of the three vendors who bid on the family day items. In the case of Mr. Gros, there was a major inconsistency between what investigators say he told them before trial and his trial testimony. In addition, investigators obtained copies of all paperwork relating to the family day bid.
Both at trial and on appeal, plaintiffs argue that the purpose of the NSU investigation was the removal of Dr. Ayo as president of the university. They maintain that malice and/or a reckless disregard for truth is demonstrated in this case by the fact that the State's investigators made up their minds about wrongdoing before the investigation even began, failed to make necessary inquiries, failed to judge evidence objectively, failed to conduct the investigation in a thorough and professional manner, purposefully avoided the truth, and omitted all contradictory data from the report. Plaintiffs argue there were specific facts which should have led investigators to draw conclusions other than the ones they made, or which should have lead them to make additional inquiries.
Initially, we note that, other than Mr. Davis' testimony, the record is devoid of evidence to support plaintiffs' assertions that the purpose of the investigation was to remove Dr. Ayo from office or that the investigators began the investigation with preconceived conclusions. Mr. Davis' testimony to that effect is unsubstantiated speculation.
Further, even if we were to accept plaintiffs' contentions that the investigators' conclusions were illogical and unreasonable based on the evidence in their possession or available to them, this fact merely reflects on their competence or possible negligence, in the absence of evidence that they had serious doubts as to the truth of their conclusions. To allow recovery, the evidence must demonstrate that the defendant entertained serious doubts as to the truth of the statements or acted with a high degree of awareness of their probable falsity. Mere negligence in making a statement is insufficient to establish reckless conduct.
Plaintiffs also contend that malice is demonstrated by the fact that the IG's report did not contain any of the rebuttal evidence provided by Michael Davis, Tommy Gros, and Ann Esposito (one of the unsuccessful bidders). *185 The trial court accepted this argument. However, we find it unpersuasive because, with the exception of Mr. Davis' denials of wrongdoing, it is not clear from the record that the investigators realized or believed at the time the report was written that there was other evidence supporting Mr. Davis' version of events. In conclusion, we find that while the evidence presented and the arguments made by plaintiffs may raise issues as to negligence or incompetence in the manner that the investigation was conducted, the evidence does not rise to the level of proving by clear and convincing evidence that the statements in questions were made with either actual malice, an awareness of their probable falsity, or with serious doubts as to the truth thereof. Accordingly, plaintiffs failed to sustain the burden of proof necessary for recovery.

BORSKEY'S APPEAL
Plaintiffs' claim against Mr. Borskey is based on an affidavit[4] Mr. Borskey gave to investigators during the course of the NSU investigation. The IG's report relied on this affidavit as support for its conclusions of wrongdoing by Mr. Davis.
The threshold issue in a defamation suit is whether the words complained of are defamatory to the plaintiff. In order to determine whether the words can be construed to have a defamatory meaning in relation to the plaintiff, the statement in question must be viewed as a whole. Cortez v. Shirley, 555 So.2d 577, 579 (La.App. 1st Cir.1989).
A defamatory communication is one that tends to harm the reputation of another so as to lower that person in the opinion of the community or to deter third persons from associating or dealing with him. Sassone v. Elder, 626 So.2d 345, 352 (La. 1993). Defamatory words include almost any language which on its face has a tendency to injure a person's reputation. Cortez, 555 So.2d at 580. The issue of whether a communication is capable of a defamatory meaning is one for the court. That question is answered by determining whether a person hearing the communication could reasonably understand it, taken in context, to have been intended in a defamatory sense. Sassone, 626 So.2d at 352.
We find that the affidavit at issue in this case was not defamatory and therefore not actionable. The jury was clearly wrong in finding that Mr. Borskey's words were defamatory. The affidavit which forms the basis of plaintiffs' claims against Mr. Borskey provides as follows:
On 9/12/88, I [Borskey] submitted a bid form to the purchasing office for family day items consisting of game slats, pens, cups, beverage holders and labels. On 9/14/88 Mr. Mike Davis [plaintiff] conducted telephone bids on these items. On the same day Mr. Davis contacted me by telephone and informed me I was on a three way conference call with bidder Tommy Gros. I do not know what conversation had transpired with other bidders or with Mr. Gros prior to the call.
Mr. Davis asked if vinyl label would be acceptable and the answer was yes. It was also determined that beverage holders would be deleted[.] I was then put on hold. When re-connected it was determined that if a larger purchase of cups were [sic] placed a lower unit price could be received. Mr. Davis stated that Mr. Gros would then be the low bidder.
At this time (family day was soon approaching & the order needed to be placed and items recieved [sic]) I felt everything was in order. Mr. Davis stated that I would need to inital [sic] the change on the bid form. When I went to his office to do so he informed me he did not like doing business in that manner (referring to the conversation on the phone.)
In closing I am writing this statement as I am concerned for the future of this university and wish these matters be [sic] cleared.
Mr. Borskey gave this affidavit to investigators in response to their specific enquiries about the purchase of items for family day. *186 It describes his recollection of the three-way conversation with Mr. Tommy Gros, the vendor who was awarded the contract. Plaintiffs argue the affidavit implies that Mr. Davis conspired with Mr. Gros to undermine proper state bid law procedures. We disagree.
Considering the affidavit in its entirety, we find it does not state any conclusions or accuse Mr. Davis, directly or by implication, of any wrongdoing or conspiracy with respect to the family day purchases. In fact, no mention of state bid procedures is made in the affidavit. Further, it specifically states that Mr. Borskey "felt everything was in order" regarding the purchase. We find that the affidavit, in itself, does not reasonably lead to the conclusion that Mr. Gros was given any specific advantage in the bid process as alleged by investigators. In fact, the affidavit specifically states that Mr. Borskey did not have any knowledge as to what had transpired with other bidders and, therefore, does not exclude the reasonable possibility that the other vendors were also given an opportunity to bid on multiple combinations and quantities of items.
Defamatory words are an essential element for recovery in a defamation suit. Gugliuzza v. K.C.M.C., Inc., 606 So.2d 790, 791 (La.1992). In view of our conclusion that the affidavit was not defamatory, we reverse that portion of the trial court judgment holding Mr. Borskey and his insurer, INA, liable for defamation of Mr. Davis.
In any event, even if the affidavit was defamatory, reversal of the judgment against Mr. Borskey and INA would still be required for the same reason that the judgment against the State must be reversed. At the conclusion of trial, the jury completed special interrogatories as follows:

SPECIAL JURY INTERROGATORIES
1. Did the defendant, William Borskey, speak or write defamatory words about Michael Davis?
 YES X NO___
2. Did the defendant, William Borskey, communicate those words to a person other than Michael Davis?
 YES X NO___
3. Did the words spoken or written by the defendant, William Borskey, directly or indirectly accuse Michael Davis of a crime?
 YES X NO___
If you answer to this question is YES, proceed to Question # 6. If your answer to this question is NO, proceed to Question # 4.
4. Were the words spoken or the statement made by the defendant, William Borskey, false?
 YES___ NO___
If your answer to this question is YES, proceed to the next question. If your answer to this question is NO, STOP! proceed to Question # 12; the foreman will sign and date this form.
5. Did the plaintiff prove by clear and convincing evidence that the words spoken or the statement made by William Borskey were spoken or written by William Borskey with malice on his part?
 YES___ NO___
If your answer to this question is YES, proceed to Question #8. If your answer to this question is NO, STOP! proceed to Question # 12; the foreman will sign and date this form.
6. Did the defendant, William Borskey, prove, by a preponderance of the evidence, that the defamatory words are true?
 YES___ NO X 
7. Did the defendant prove, by a preponderance of the evidence, that the words were spoken and/or written without malice?
 YES___ NO X 
8. Did the defendant, William Borskey, have a qualified or conditional privilege to make the written or oral statement to the Inspector General and the State Troopers, that is, was he acting in good faith at the time, and was he speaking on a subject in which he had a duty or interest to speak and did he communicate with a person have a corresponding duty or interest?
*187
 YES___ NO X 
An examination of these interrogatories reveals that the jury verdict was based on an improper shifting of the burden of proof to Mr. Borskey to rebut a presumption of falsity and malice, based on the jury's conclusion that the affidavit accused Mr. Davis of a crime. As discussed above, recovery in a defamation suit by a public official based on such a shifting of the burden of proof is impermissible under New York Times Company v. Sullivan and its progeny. Further, we conclude from our independent review of the record that the evidence is insufficient to establish by clear and convincing evidence that the statements by Mr. Borskey were made with either actual malice or reckless disregard for whether or not they were true.

CONCLUSION
For the above reasons, the judgment of the trial court is reversed as to all parties and judgment is hereby rendered dismissing plaintiffs' suit in its entirety. Mr. Borskey's third-party demand is also hereby dismissed. Plaintiffs are to pay all costs of this appeal.
REVERSED AND RENDERED.
NOTES
[1] Accordingly, we pretermit the other assignments of error raised by appellants. In view of the reversal of the trial court judgment, we also pretermit consideration of the exceptions of no right and no cause of action filed by defendants in this Court with respect to the award made to Mrs. Davis for loss of consortium.
[2] In brief, plaintiffs argue the trial court erred in concluding Mr. Davis was a public official. We note that this issue is not properly before us since plaintiffs neither appealed nor answered this appeal. Accordingly, plaintiffs may not now seek to have this ruling reversed. La.C.C.P. art. 2133. In any event, we believe the trial court's finding that Mr. Davis is a public official was correct. NSU President, Dr. Ayo, testified as to the importance of Mr. Davis' position, and Mr. Davis himself acknowledged that the position was one of particular notice to the public. See e.g., the following cases in which the plaintiffs were found to be public officials: Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966) (supervisor of county ski recreation area); Hicks v. Stone, 425 So.2d 807, 813 (La.App. 1st Cir. 1982), writ denied, 429 So.2d 129 (1983) (dean of university college of education); Guzzardo v. Adams, 411 So.2d 1148, 1150 (La.App. 1st Cir.) (personnel coordinator for parish clerk of court), writ denied 415 So.2d 942 (La.1982).
[3] It is not clear from the trial court's oral reasons whether it also found the State Police report defamatory. In any event, all of the findings and comments made hereafter in this opinion regarding the IG's investigators and the IG report are equally applicable to the State Police investigators and their report.
[4] Although plaintiffs' petition refers to additional statements allegedly made by Mr. Borskey, at trial evidence was introduced only as to statements substantially the same as those contained in the Borskey affidavit.