660 So.2d 17 (1995)
Michael G. DAVIS and Claudette Gravois Davis
v.
William L. BORSKEY and the State of Louisiana.
No. 94-C-2399.
Supreme Court of Louisiana.
September 5, 1995.
*18 Jerald P. Block, Keith J. Labat, Thibodaux, for applicant.
*19 Lynn L. Lightfoot, Lightfoot Grady C. Weeks, Weeks, Starks & Callahan, Houma; John N. Kennedy, Douglas L. Grundmeyer, New Orleans, Peter G. Wright, Baton Rouge, James C. Erny, Houma, Howard P. Elliott, Jr., Baton Rouge, Patrick C. Grace, New Orleans, for defendant.
Howard P. Elliott, Jr., Baton Rouge, for amicus curiae Public Safety of Corrections Dept.
LEMMON, Justice[*].
This is a defamation action. Plaintiff, who was the purchasing agent for Nicholls State University, based his defamation claims on two separate but related statements, each of which involved separate defendants. The first statement was made by defendant William Borskey, director of the Nicholls student union, during the course of an investigation of various administrative practices at Nicholls by the Inspector General (IG) of Louisiana. The second statement was the report of the investigation issued by the IG, who is also a defendant in this action.
The principal issue that concerned this court in granting certiorari is whether plaintiff met his burden of proving actual malice, which is an extremely heavy burden placed on a public official plaintiff in a defamation case based on statements relating to the plaintiff's official conduct.

Facts
Plaintiff's duties as purchasing agent included the purchase of items for the various departments of the university. In the state-regulated purchasing process, a departmental employee submitted a requisition form to the purchasing department listing the needed items. If the total value of the items was less than $2,000, the purchasing agent was authorized to take telephone bids from a minimum of three vendors. However, if the total purchase amount exceeded $2000, written bids from at least eight vendors were required.
In the incident which gave rise to the allegedly defamatory statements, Borskey submitted a requisition to the purchasing department on September 12, 1988 for the purchase of five items for use at Nicholls' Family Day on October 1, 1988.[1] Because of the short period for bidding caused by the late submission of Borskey's requisition, plaintiff recognized that the time-consuming process for written bids would make it virtually impossible to meet the October 1 deadline. He therefore sought to keep the total amount of the purchase below the $2,000 maximum for telephone bidding.
Plaintiff immediately initiated the bidding process in which he ultimately telephoned three vendors. Tommy Gros of Always in Mind (A.I.M.), one of the vendors suggested by Borskey, submitted a verbal bid for the five items of $2,560. Plaintiff then contacted Borskey, and the two of them participated in a three-way telephone conversation with Gros to explore reducing the order so as to bring the total purchase under the $2,000 ceiling. During that conversation, Borskey deleted certain items from his request and indicated that vinyl name tags would be acceptable. In addition, the number of cups was increased from 1,000 to 1,500, resulting in a lower unit price. At the end of that three-way conversation, Gros submitted his final bid based on the revised specifications for the three items remaining on the list, namely, the cups, name tags, and game slates.
Bids were also taken from two other vendors, Acadian Advertising and J.W. Toups, although the timing and specifications of those bids were disputed at trial. Plaintiff awarded the contract to Gros for $1,975.
In February of 1989, the IG and the Louisiana State Police initiated investigations into various practices at Nicholls, with the IG looking into administrative violations and the State Police investigating criminal violations.[2] *20 Nicholls' president instructed university employees to cooperate in the joint investigation.
Based on a tip from a Nicholls' employee, IG representatives contacted Borskey and questioned him about possible irregularities in the bidding process for purchases for the 1988 Family Day. Borskey eventually signed an affidavit which formed the basis of one of plaintiff's defamation claims. Borskey's affidavit essentially stated that he had taken part in a three-way telephone conversation with Gros and plaintiff concerning bids for the Family Day purchases; that he had agreed during that conversation to delete the beverage holders from the order and to accept vinyl name tags; that he was put on hold for a portion of the three-way call; that when he was reconnected, Gros stated he could offer a lower unit price for the cups if Nicholls could use a larger quantity; that plaintiff then stated the combination of deleting some items and increasing the quantity of cups at a lower unit price would make Gros the low bidder; and that because of the imminence of Family Day during the bidding process, Borskey "felt everything was in order."[3]
At the conclusion of the investigation, the IG issued a report which became a public document. The report began with the statement that plaintiff "engaged in the manipulation of bids to funnel at least two purchases to a favored vendor, according to evidence obtained." The report further stated that plaintiff discussed changes in bid specifications with Gros and allowed Gros to change his original bid price, thereby enabling him to become the low bidder; that Gros was allowed to bid on vinyl name tags rather than the paper tags on which the other two vendors submitted lower bids, and the other vendors were not given the opportunity to bid again after the specifications were revised; that Gros' bid for the cups was altered on the bid form, reducing the bid from $0.35 to $0.32 per cup; and that Gros stated he was awarded the bid at the end of the telephone conversation in which the changes were made. The report concluded that "[e]vidence exists indicating that Mr. Mike Davis, purchasing agent for the University, conspired with Mr. Tommy Gros of A.I.M., a vendor, to rig at least two bids." The IG recommended that appropriate administrative action be taken against plaintiff and that the evidence be submitted to the proper authorities for prosecution of both plaintiff and Gros.
The State Police also issued a report, which concluded that plaintiff and Gros had conspired to rig bids. The report additionally suggested plaintiff was guilty of malfeasance in office.
The District Attorney, after conducting his own investigation, determined that the allegations of misconduct were without merit and declined to bring charges against Davis.
Plaintiff filed this action, initially naming only Borskey and his insurer as defendants. He subsequently amended his petition to add as additional defendants the IG and Governor, as well as the state employees who conducted the joint investigations.[4]
*21 The trial was bifurcated, with the judge trying the claim against the State and the jury trying the claim against Borskey. In reasons for judgment, the trial judge stated that the IG's report was defamatory per se because it accused plaintiff of a criminal act. The judge ruled that since falsity and malice were presumed under these circumstances, the burden of proof shifted to the State to prove the truth of the statements or the absence of malice. The judge concluded that the State had not carried its burden of establishing that the statements were true or made without malice. The jury, instructed by the judge on the shifting of the burden of proof, found that Borskey also had not fulfilled his burden.
The trial court rendered judgment against the State and Borskey in solido, awarding damages of $210,000.00 to plaintiff for mental suffering, humiliation, and loss of reputation.[5] Defendants appealed, urging error in the trial court's shifting the burden of proof and in finding sufficient evidence of the essential elements of defamation.
The court of appeal reversed, ruling that the trial court erred in shifting the burden of proof to the defendants and in instructing the jury on the shifting of the burden of proof. 92-2339 (La.App. 1st Cir. 8/22/94); 643 So.2d 179. Agreeing with the trial court that plaintiff was a public official by virtue of his position as purchasing agent for a state university,[6] the court of appeal ruled that the trial court should have applied, and instructed the jury to apply, the "actual malice" standard mandated by New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Because of these trial errors, the court conducted a de novo review, deciding the case on the record without according any deference to the jury's verdict or the trial judge's decision. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975).
After reviewing the record under the New York Times standard in defamation suits by public officials, namely, that the public official must prove by clear and convincing evidence that the statement was made with knowledge that it was false or with reckless disregard of whether it was false or not, the court concluded:
After an independent review of the record, we find that the evidence does not support a finding that the statements in question were made with knowledge of falsity, i.e., actual malice. In fact, the evidence reveals that the statements in the IG's report were made with a subjective belief as to their truth. We further conclude that plaintiffs failed to prove by clear and convincing evidence that the statements *22 were made with reckless disregard of whether or not they were true.
92-2339 (La.App. 1st Cir. 8/22/94); 643 So.2d at 184. The court also reached the same conclusion as to the State Police report. Furthermore, the court determined that the statements made in Borskey's affidavit were not defamatory. Accordingly, all claims were dismissed.
We granted certiorari to review the judgments of the lower courts. 94-2399 (La. 12/19/94); 648 So.2d 398.

Defamation Claim against Borskey
The court of appeal dismissed plaintiff's claim against Borskey on the basis that the statements contained in Borskey's affidavit were not defamatory.
Statements are defamatory only if the words, taken in context, tend to injure the person's reputation, to expose the person to public ridicule, to deter others from associating or dealing with the person, or to deprive the person of public confidence in his or her occupation. See, e.g., Sassone v. Elder, 626 So.2d 345, 352 (La.1993). The question for the court in determining whether words have a defamatory meaning is whether a third person hearing the communication would have reasonably understood the communication, taken in context, as intended in a defamatory sense. Id.
Borskey's affidavit stated his recollection of the three-way conversation with Gros and plaintiff about the bidding for Family Day supplies. While Borskey did state in the affidavit that he was placed on hold during the three-way call, a situation that evidence at trial showed was impossible with the university's telephone system, any falsity[7] in that statement was essentially irrelevant to the issue of whether the statements were defamatory. The affidavit did not imply that any wrongdoing occurred while Borskey may not have been listening, for whatever reason, and Borskey stated that Gros and plaintiff reported after he resumed participation in the conversation that Gros could offer a lower unit price since a larger quantity of cups was to be ordered. Gros' final bid was based on the revised quantities and prices, as well as on the deletions and other specification changes, and there was wrongdoing in the deletions and specification charges only if the other two bidders were not allowed to bid on the revised specifications. The affidavit specifically asserted that Borskey had no additional knowledge about other conversations that may or may not have taken place between plaintiff and the three vendors before the three-way call and was silent as to any conversations after the call.
In summary, the affidavit did not contain any accusations or implications of wrongdoing by plaintiff. In fact, the affidavit indicated that Borskey himself initialed and approved the changes on the bid form and that Borskey "felt everything was in order."
We conclude that the statements contained in Borskey's affidavit were not defamatory and therefore are not actionable. Rather, they were statements made by an employee pursuant to questioning by governmental investigators with whom he was instructed to cooperate. Consisting primarily of Borskey's factual memory of what transpired during the three-way telephone conversation, the affidavit left open the possibility that plaintiff contacted the other vendors for their bids after he changed the quantities and specifications of the pertinent items and after Gros' final bid was submitted during the three-way call.
Although plaintiff argues that Borskey's affidavit suggested plaintiff awarded Gros the contract at the conclusion of the three-way conversation without giving the other vendors the opportunity to bid on the revised order, the affidavit merely reiterated plaintiff's statement that deleting certain items and revising the amount of cups to achieve a lower unit price would make Gros the low bidder, without suggesting one way or the other whether plaintiff contacted the other two vendors before awarding the contract to Gros.
*23 The affidavit does not directly state or even imply that Borskey was accusing plaintiff of rigging bids or of giving Gros a special advantage in the bid process that was not afforded to other vendors. Because plaintiff did not carry his burden of proving that the statements in the affidavit carried a defamatory meaning in context to the reasonable listener, he has failed to establish that the statements contained in Borskey's affidavit were defamatory.

Defamation Claim Against the State
In order to recover damages for defamation under the New York Times standard,[8] a plaintiff who is a public official must establish by clear and convincing evidence that the defamatory statement was made with actual malice, that is, "with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan, 376 U.S. at 279-80, 84 S.Ct. at 725-26. A public official plaintiff cannot recover for a defamatory statement relating to his or her official conduct, even if false, unless the public official proves actual malice by clear and convincing evidence. Kidder v. Anderson, 354 So.2d 1306, 1308 (La.1978). At the very least, the public official plaintiff must prove that the defendant published the false statement with a high degree of awareness of its probable falsity. Garrison v. Louisiana, 379 U.S. 64, 74, 85 S.Ct. 209, 215, 13 L.Ed.2d 125 (1964); Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991); Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 667, 109 S.Ct. 2678, 2686, 105 L.Ed.2d 562 (1989). Or the public official plaintiff must prove that "the defendant in fact entertained serious doubts as to the truth of the publication." St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968).
Even if a public official plaintiff demonstrates that a defendant was grossly negligent in publishing false statements, that showing is insufficient to prove that the defendant acted with reckless disregard for the truth. Masson v. New Yorker Magazine, Inc., 501 U.S. at 510, 111 S.Ct. at 2429. Instead, a public official plaintiff must clearly prove that the defendant actually knew the published statements were false or that the defendant was highly aware that the statements were probably false.
In the present case, plaintiff initially contends that if Borskey's affidavit did not contain defamatory words, then the IG's report, which was based on that affidavit and which clearly contained defamatory words, must have been issued with actual malice. However, the IG's report was not based merely on Borskey's affidavit, but was based upon an investigation in which a number of persons were questioned about plaintiff's conduct in taking bids for Family Day. In concluding that plaintiff had conspired with Gros to manipulate the bidding process, the IG relied upon evidence that consisted not only of Borskey's affidavit, but also of the bid form with scratch-outs, notations and alterations, and of statements given by all three vendors and by plaintiff and Borskey.
On the final bid form, certain prices and quantities were scratched out and replaced with new quantities and with revised bid prices for A.I.M. Plaintiff testified that scratch-outs are common on bid sheets and that the changes merely indicated the different prices and quantities agreed upon during the three-way telephone conversation, further *24 explaining that he contacted the other vendors and took their bids after the conclusion of the three-way call and before awarding the order to Gros as the lowest bidder. Under the scenario related by plaintiff, no bidding irregularities occurred. However, other evidence indicated that at least one of the vendors was not given an opportunity to bid on the revised quantities and specifications.
Plaintiff testified that both Acadian Advertising and J.W. Toups submitted bids for the revised quantity of 1,500 cups. While Ann Esposito of J.W. Toups confirmed that she bid on 1,500 cups, Evelyn Flynn of Acadian Advertising reported that her only bid was based upon an order for 1,000 cups. Flynn's statement to the IG that she was not given the opportunity to revise her bid after the cup quantity was increased to 1,500 provided support for the bid-rigging charge against plaintiff.
Furthermore, plaintiff noted on the bid form that both Acadian Advertising (the overall low bidder for the three items) and J.W. Toups failed to meet the bid specifications for the name tags and that neither could provide the type of tags required. Plaintiff testified at trial that vinyl name tags take longer to manufacture than paper tags, that Acadian and J.W. Toups both indicated to him that they could not provide vinyl tags by October 1, and that Gros of A.I.M. had the design on hand and could meet the October 1 deadline. Both Flynn of Acadian and Esposito of J.W. Toups contradicted plaintiff's version, stating that they were given the opportunity to bid only on paper name tags and not on vinyl tags. Flynn and Esposito insisted that they could have provided vinyl name tags in time for Family Day. A reasonable interpretation of Flynn's and Esposito's statements was that plaintiff telephoned them prior to the three-way conversation and did not give them the opportunity to submit new bids after Borskey agreed that vinyl tags would be acceptable.
Therefore, it was not only Borskey's affidavit that provided the information in support of the IG's conclusion that bid-rigging had taken place, but also Flynn's statement that her sole bid was on 1,000 cups and Flynn's and Esposito's statements that they were never given the chance to bid on vinyl tags and could have provided them by the October 1 deadline.
Plaintiff's principal contention was that malice formed the very basis of the investigation from the outset. He testified that the investigation focused only on the university president's supporters, with the ultimate goal of ousting the president.[9]
The burden of proof on public official plaintiffs in defamation cases concerning their official conduct is indeed a very difficult one. Nevertheless, a public official plaintiff arguably can prove actual malice with his own testimony and sufficient corroborating evidence. The problem in the present case is the lack of corroborating evidence.
The fact that the IG's auditor chose to report an incident involving a small bid confected under the pressure of a hasty bidding process not caused by plaintiff, when there was no suggestion of any bidding irregularities ever attributable to plaintiff in the past, lends some weight to plaintiff's assertion that the purpose of the entire investigation was to target and undermine those university officials loyal to the president. But the weight of this circumstantial evidence, added to plaintiff's own testimony, simply does not constitute clear and convincing evidence of actual malice.
The accusations in the IG's report clearly were not arbitrary, because the information gathered in the investigation provided some basis for the conclusions. While it might well have been more reasonable for the IG to have investigated plaintiff's bidding practices more thoroughly before drawing conclusions and publishing a final report that charged plaintiff with criminal activities, a plaintiff cannot satisfy the New York Times actual malice standard by demonstrating only that the defendant failed to investigate fully the truth of the statements before publication. *25 Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. at 688, 109 S.Ct. at 2696; Gertz v. Robert Welch, Inc., 418 U.S. 323, 330, 94 S.Ct. 2997, 3002, 41 L.Ed.2d 789 (1974); St. Amant v. Thompson, 390 U.S. at 732-33, 88 S.Ct. at 1326; Curtis Publishing Co. v. Butts, 388 U.S. 130, 155, 87 S.Ct. 1975, 1991, 18 L.Ed.2d 1094 (1967). The IG's failure to investigate further before issuing his report is therefore insufficient to establish that defendants acted with actual malice or reckless disregard for the truth.

Decree
The judgment of the court of appeal dismissing plaintiff's claims is affirmed.
NOTES
[*] Judge Charles R. Lindsay, Court of Appeal, Second Circuit, sitting as Justice Pro Tempore, in place of Justice James L. Dennis.

Watson, J., not on panel.
[1] The requisition form listed nine gross of pens, 1,000 self-erasing game slates, 1,000 imprinted plastic cups, 1,000 beverage holders, and 2,500 imprinted name tags.
[2] An IG investigation one year earlier had led to the criminal conviction of a university official.
[3] Borskey's affidavit in full stated:

On 9/12/99 I submitted a bid form to the purchasing office for family day items consisting of game slats [sic], pens, cups, beverage holders, and labels. On 9/14/88 Mr. Mike Davis conducted telephone bids on these items. On the same day Mr. Davis contacted me by telephone and informed me I was on a three way conference call with bidder Tommy Gros. I do not know what conversation had transpired with other bidders or with Mr. Gros prior to the call.
Mr. Davis asked if vinyl labels would be acceptable and the answer was yes. It was also determined that beverage holders would be deleted. I was then put on hold. When re-connected [sic] it was determined that if a larger purchase of cups were placed a lower unit price could be recieved [sic]. Mr. Davis stated that Mr. Gros would then be the low bidder.
At this time (family day was soon approaching & the order needed to be placed and items recieved [sic]) I felt everything was in order. Mr. Davis stated that I would need to initial the change on the bid form. When I went to his office to do so he informed me he did not like doing business in that manner (referring to the conversation on the phone).
In closing I am writing this statement as I am concerned for the future of this university and wish these matters be cleared.
[4] By stipulation, plaintiff dismissed all individual defendants (except Borskey) for whom the State might be vicariously liable.
[5] The court also awarded $60,000.00 to plaintiff's wife for loss of consortium and rendered judgment in Borskey's favor on his third-party demand against the State for indemnification.
[6] The court of appeal incorrectly ruled that because plaintiff had not appealed or answered the appeal, he could not challenge on appeal the trial court's finding that he was a public official.

Appeals are taken from judgments, and not from findings on various issues in the course of the trial court's determination of the judgment. Plaintiff obtained a judgment in the trial court against both defendants in an amount satisfactory to him, and he had no reason to appeal or answer the appeal. Under the 1989 amendment to La.Code Civ.Proc. art. 2133 (which was designed to do away with useless protective appeals), plaintiff did not need to appeal or answer the appeal in order to raise any argument supported by the record in support of his judgment. He was thus entitled to support his judgment against the State by arguing that he was not a public official and therefore not subject to the actual malice standard.
Nevertheless, the lower courts were correct that plaintiff was a public official. In Rosenblatt v. Baer, 383 U.S. 75, 85, 86 S.Ct. 669, 676, 15 L.Ed.2d 597 (1966), the Court concluded that "the `public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to have, substantial responsibility for or control over the conduct of governmental affairs." The Court stated that the New York Times standard applies when a plaintiff holds a governmental position that invites public scrutiny and discussion and "has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it...." Id. at 86-87, 86 S.Ct. at 676. Candidates for public office, public school teachers, state university personnel, and police officers have been considered public officials. See Stuart M. Speiser et al, The American Law of Torts § 29:21 (1991). As purchasing agent at a state university with the authority to negotiate financial transactions and handle significant amounts of university funds, plaintiff had "substantial responsibility for or control over the conduct of governmental affairs," and was a public official.
[7] In testimony at trial, Borskey stated that he was not placed on hold by an electronic device, but was simply asked to stand by while plaintiff and Gros made calculations pertinent to possible bid specification revisions.
[8] In his application for certiorari, plaintiff raised the issue of the applicability of the New York Times defamation standard in cases involving government defendants. However, plaintiff conceded in brief to this court, as well as in oral argument, that the New York Times standard is applicable to this case.

Numerous courts have allowed governmental defendants the protection of the New York Times standard in cases involving public official plaintiffs. See e.g., Garrison v. State of Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964) (district court judges filed suit against district attorney based on his disparaging remarks about their judicial conduct); Bienvenu v. Angelle, 254 La. 182, 223 So.2d 140 (1969) (plaintiff sued state legislator for allegedly defamatory statements made in an attempt to block her appointment as Parish Director of Public Welfare); Hicks v. Stone, 425 So.2d 807 (La.App. 1st Cir. 1982), cert. denied, 429 So.2d 129 (La.1983) (former dean of state university sued university president and board of supervisors for defamation); McKinley v. Baden, 777 F.2d 1017 (5th Cir.1985) (former police officer filed defamation suit against mayor).
[9] Plaintiff argues that the IG omitted favorable evidence from the report and failed to conduct a thorough investigation or to evaluate the evidence objectively. However, this argument is more conclusion than fact, and the facts are lacking to support these conclusions.