798 So.2d 209 (2001)
Kathleen P. HUXEN
v.
Sylvia Villasenor, wife of/and Rosalio VILLASENOR, et al.
No. 01-CA-288.
Court of Appeal of Louisiana, Fifth Circuit.
September 25, 2001.
*211 Richard C. Trahant, Metairie, LA, Attorney for Plaintiff-Appellant.
Keith R. Credo, Metairie, LA, Attorney for Defendants-Appellees.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
Kathleen Huxen filed this suit for damages against Rosalio and Sylvia Villasenor and their son, Daniel, alleging defamation and intentional infliction of emotional distress arising out of an incident on April 24, 1996. The Villasenors reconvened against *212 Huxen for battery against Daniel, or in the alternative negligent injuring. After a bench trial, judgment was rendered in favor of Huxen and against the Villasenors and their insurer in the amount of $250.00. Huxen has appealed the award of damages, seeking an increase in the amount awarded. The Villasenors have answered the appeal seeking to have the trial court's finding of liability reversed. For the reasons stated herein, we affirm the trial court's judgment.

FACTS
Kathleen Huxen was a sixth grade teacher at Adams Middle School in Jefferson Parish and Daniel Villasenor was a student in her class. On April 24, 1996, Ms. Huxen confiscated Daniel's bookbag because he was resting his head on it during class in violation of her established rules. A short time later, Mrs. Villasenor arrived at the school to pick up Daniel who had complained of feeling ill. Ms. Huxen refused to return Daniel's bookbag to him, and Mrs. Villasenor returned to the classroom with Daniel to retrieve it. Ms. Huxen and Mrs. Villasenor engaged in a discussion about the return of the bag, and Ms. Huxen eventually returned the bag to Daniel. After the Villasenors left the school building, Daniel complained that his arm hurt, and he informed Mrs. Villasenor that Ms. Huxen had grabbed him on the arm. Mrs. Villasenor telephoned her husband, Rosalio Villasenor, who called the school to report the incident. Because the principal was not in at the time, Mr. Villasenor reported the incident to the parent volunteer who answered the phone, and then again to the school counselor who took the call at the request of the volunteer. The message given by Mr. Villasenor was later relayed to the school principal. The following day, Mr. Villasenor sent a letter to the principal concerning the incident. This litigation followed.

DISCUSSION
Defamation is an invasion of a person's interest in his reputation and good name. Sassone v. Elder, 626 So.2d 345, 350 (La.1993), citing W. Page Keeton, et al., Prosser and Keeton on the Law of Torts Sec. 111 (5th ed.1984). The essential elements of a defamation action are (1) defamatory words, (2) publication or communication to a third person, (3) falsity, (4) malice (actual or implied) and (5) resulting injury. Brannan v. Wyeth Laboratories, Inc., 526 So.2d 1101, 1105 (La.1988); Cangelosi v. Schwegmann Bros. Giant Super Markets, 390 So.2d 196 (La.1980).
The first inquiry is whether the words used are defamatory. Statements are defamatory only if the words, taken in context, tend to injure the person's reputation, to expose the person to public ridicule, to deter others from associating or dealing with the person, or to deprive the person of public confidence in his or her occupation. Davis v. Borskey, 94-2399 (La.9/5/95); 660 So.2d 17, 22; Sassone v. Elder, supra, 626 So.2d at 352. The question for the court in determining whether words have a defamatory meaning is whether a third person hearing the communication would have reasonably understood the communication, taken in context, as intended in a defamatory sense. Davis, supra, 660 So.2d at 22. In Louisiana, accusation of a crime is considered defamatory per se. Cangelosi, 390 So.2d at 198; Davis v. Borskey, 660 So.2d 17. Generally, defamation per se creates a presumption of falsity and malice which the defendant bears the burden of rebutting. Redmond v. McCool, 582 So.2d 262, 265 (La.App. 1 Cir.1991).
Proof of the truth of a defamatory remark is a valid defense in a civil suit for defamation. LSA-R.S. 13:3602; Brannan, 526 So.2d at 1105. Privilege is also a defense to a defamation action. Elmer *213 v. Coplin, 485 So.2d 171, 176 (La.App. 2nd Cir.), writ denied, 489 So.2d 246 (La. 1986). Privileged communications are divided into two general classes: (1) absolute or unqualified; and (2) conditional or qualified. Elmer, 485 So.2d at 176. An absolute privilege exists in a limited number of situations, such as certain statements by judges and legislators in their official capacities. A conditional privilege is applicable if the communication is made (a) in good faith, (b) on any subject matter in which the person communicating has an interest or in reference to which he has a duty, (c) to a person having a corresponding interest or duty. Id.
This privilege arises from the social necessity of permitting full and unrestricted communication concerning a matter in which the parties have an interest or duty, without inhibiting free communication in such instances by the fear that the communicating party will be held liable in damages if the good faith communication later turns out to be inaccurate. Id.
The trial court made a determination following trial that the communications between Mr. Villasenor and the individuals at school concerning the incident with his son constituted defamation per se and that Ms. Huxen suffered injury as a result. The trial court also apparently made a determination that the communications made to third persons were not privileged. Our review of the record in this case indicates that these determinations, which are supported by the record, are not manifestly erroneous.
Testimony at trial indicates that on the day of the incident in question, Mr. Villasenor telephoned Adams Middle School to speak to the principal, Mrs. Keller. Toni Kawash, a parent volunteer, answered the phone and was told by Mr. Villasenor that his son was hit by a teacher, that the teacher grabbed his shirt, and that his son had been taken to the hospital. Ms. Kawash stated that she took notes of the call and that the caller was upset. She did not feel comfortable handling the call, and she transferred the call to a school employee.
Gail Cheek testified that she is a counselor at Adams Middle School and that she took a phone call from Mr. Villasenor at the request of a parent volunteer. She stated that Mr. Villasenor was upset and wanted to speak to the principal. Mr. Villasenor further told Ms. Cheek that Ms. Huxen had hit his child and that his child had been brought to the emergency room. Ms. Cheek stated that she wrote a message and gave it to the principal, Mrs. Keller, when she returned.
Elizabeth Keller, the principal of Adams Middle School, testified that she received a phone message from Mr. Villasenor on April 24, 1996 regarding his son. She stated that she returned the call and was informed that Mrs. Huxen screamed at his wife and child and grabbed his son in front of the whole class. She stated that Mr. Villasenor was agitated and forceful, and he stated that his son had bruises from the incident. Mrs. Keller stated that she interviewed the students who were in the class at the time and took statements about what occurred that day. None of the students who witnessed the incident stated that they saw Ms. Huxen hit or grab Daniel Villasenor.
Mr. Villasenor testified at trial that he was informed by his daughter Rosalie that Ms. Huxen grabbed Daniel at school and that he noticed Daniel had "a little bruise of touching, a little mark" on his arm. He stated he then telephoned the school to report this incident and told Ms. Cheek and then the school principal that a teacher grabbed his son. Mr. Villasenor stated he understood that the actions he described to the school employees indicated a *214 violation of the law. He also identified a letter which he sent to Mrs. Keller which referenced the incident "involving verbal and physical abuse from Ms. Huxen." In this letter, he stated he planned on contacting the proper authority who "handles abusive behavior and maltreatment of students for Jefferson Parish." He further asked the principal not to speak to Daniel about the incident during this time.
The record in this case shows that Mr. Villasenor accused Ms. Huxen both verbally and in writing of physical abuse of his child, described to the witnesses as either hitting and grabbing, which constitutes a criminal act in violation of La. R.S. 14:35. He communicated the verbal accusation to two individuals before he spoke with the school principal, Ms. Huxen's supervisor. Under the circumstances presented here, where Mr. Villasenor accused Ms. Huxen of the commission of a crime, we find no error in the trial court's determination that the statements constituted defamation per se.
The record also shows that defendants failed to produce sufficient evidence to rebut the presumption of falsity and malice. Other than Mr. Villasenor's own testimony, there was no evidence presented that the statements made were true and uttered without malice. The trial court apparently chose not to credit the testimony of Mr. Villasenor, and our review of the record supports this credibility determination.
The Villasenors also contend that these communications constituted a qualified privilege, as Mr. Villasenor had a duty to protect his child and an interest in the well-being of his child in school, and Mrs. Keller was the proper party to hear his concerns. However, the application of this privilege requires the communication to be made in good faith to the person having a corresponding interest or duty in the matter. The record is clear that after he was informed that Mrs. Keller was not present at the time of his call, Mr. Villasenor gave full details of his version of the incident to two other individuals who were not connected with the incident. Further, Mr. Villasenor's assertions of good faith are not supported by the record. Although he stated he was told by his daughter Rosalie of the incident, none of the other witnesses stated that Rosalie was present at the time the incident occurred. In addition, Daniel Villasenor admitted at trial that he did not state at his deposition taken after the incident that his sister Rosalie had witnessed the incident at school.
Further, the record fails to support any of Mr. Villasenor's allegations of abuse. Mrs. Villasenor, who was present in the room at the time the incident allegedly occurred, did not see any type of abuse. None of the children who were in the room at the time stated that they saw Ms. Huxen hit or grab Daniel. Defendants failed to introduce any photographs or other corroborating evidence of the incident. Importantly, there was no medical evidence introduced to indicate that Daniel was brought to the hospital emergency room as alleged by Mr. Villasenor, or that he received any type of treatment for the alleged injury.
We have carefully reviewed the entire record in this case and find that the record shows that Mr. Villasenor uttered untrue statements about Ms. Huxen to other individuals regarding the treatment of one of her students. The statements included allegations of what could be reasonably construed as a criminal violation. Mr. Villasenor used the words "hit" and "physical abuse" which a third person hearing the communication would have reasonably understood as intended in a defamatory sense.
*215 The record clearly indicates that the defamation damaged plaintiff's reputation. Kathleen Huxen testified at trial that she had been a school teacher for 31 years at the time of this incident, and she had never received a complaint from a parent or student in her entire career, nor had she ever been disciplined or rep-remanded. She testified that when she came back to school following the incident, many of the students and faculty members were aware of the allegations against her, and some of the students believed she had been fired. The emotional toll that the Villasenors' defamation took on Ms. Huxen is also evident. Ms. Huxen testified that she was "embarrassed, upset, annoyed, agitated" about the situation. She also testified that the school's inability to reach an official resolution of the incident because of Mr. Villasenor's refusal to allow Daniel to be interviewed caused her great distress.
Based on the above, we hold that Ms. Huxen has satisfied all of the required elements of a defamation claim. We turn next to the question of damages.
Plaintiff contends that the damage award rendered by the trial court is insufficient. The standard of review for damage awards requires a showing that the trier of fact abused the great discretion accorded in awarding damages. In effect, the award must be so high or so low in proportion to the injury that it "shocks the conscience." Youn v. IMaritime Overseas Corp., 623 So.2d 1257 (La.1993) cert. den. 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
In the present case, the trial court awarded damages in the amount of $250.00, which we find to be a fairly nominal award. However, our review of the record in this matter fails to show that the trial court abused his much discretion in making this award. The testimony at trial indicates that although Ms. Huxen felt that her reputation had been diminished, both her colleague as well as the school principal testified that they did not think any less of Ms. Huxen following this incident. Further, Ms. Huxen admitted that she relayed details of the incident to others, and she may have worsened the damage by doing so. Ms. Huxen continued teaching at Adams Middle School for two years following this incident, and there is no evidence that her ability as an effective teacher was impugned by this incident. Although we find that such a serious allegation to her professional abilities could have reasonably caused Ms. Huxen some harm, under the facts of the present case, we cannot say that the trial court abused its vast discretion in rendering a nominal award to plaintiff.
Finally, we address the Villasenors' answer to the appeal that Daniel Villasenor should have been awarded damages on his reconventional demand. The Villasenors reconvened against Ms. Huxen for battery against Daniel, or in the alternative, negligent injuring. However, as previously discussed herein, the Villasenors failed to produce sufficient credible evidence that Daniel was injured by Ms. Huxen. Rather, the record supports the trial court's factual determinations that the allegations of such an injury by the Villasenors were false. We therefore find no error in the trial court's ruling dismissing the allegations of the reconventional demand.

CONCLUSION
Accordingly, for the reasons assigned herein, the judgment of the trial court is affirmed. Appellees to pay the costs of this appeal.
AFFIRMED.