# NOT FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-887

CAROL J. VINCENT

VERSUS

CSE FEDERAL CREDIT UNION, ET AL.

\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NO. 2012-5080
HONORABLE SHARON DARVILLE WILSON, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*

SYLVIA R. COOKS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Billy Howard Ezell, Judges.

AFFIRMED.

Carol J. Vincent
Pro Se Plaintiff
435 Logan Street
Sulphur, LA  70663
(337) 292-9923

Paula M. Wellons
Gerald F. Arceneaux
Taylor, Wellons, Politz & Duhe, APLC
1515 Poydras Street, Suite 1900
New Orleans, LA  70112
(504) 525-9888
ATTORNEY FOR DEFENDANTS/APPELLEES:
    CSE Federal Credit Union, Maxie Langley, Amanda Vaussine and Tom Baldassari

**COOKS, Judge.**

The record establishes on August 6 and 7, 2012, Mr. Carol Vincent went to CSE Federal Credit Union, located in Sulphur, Louisiana. The purpose of Mr. Vincent's visit was to attempt to resolve a federal tax lien issue for his friend, Mr. Victor Chaisson. Apparently, Mr. Chaisson desired to apply for a loan with CSE, but the tax lien was "holding up" that process.

During his visits, Mr. Vincent met with defendant, Amanda Vaussine, who was an employee of CSE. Mr. Vincent believed there was no actual tax lien against Mr. Chaisson and that "defendant [Ms.] Vaussine had fabricated the entire accusation of Mr. Chaisson having a federal tax lien against him." During his attempt to have the tax lien removed on the August 7, 2012 visit, a confrontation occurred between Mr. Vincent and Ms. Vaussine. Several witnesses would later testify that Mr. Vincent became very upset and spoke in a loud voice to Ms. Vaussine.

Police were eventually called to the scene, and after being interviewed by a deputy with the Calcasieu Parish Sheriff's Department, Ms.Vaussine filed a police report against Mr. Vincent. In that report she averred that Mr. Vincent threatened her and told her he had a gun and was going to kill the City of Sulphur Mayor Christopher Duncan and a city councilman, Mike Koonce. Mr. Vincent denied that he threatened Ms. Vaussine, told her he had a gun or threatened anyone else.

On December 12, 2012, Mr. Vincent filed a Petition for Damages, for Filing a False Police Report, for Defamation Per Se, for Intentional Infliction of Emotional Distress, for Intentional Tortious Conduct and for Malicious Prosecution based on the alleged fraudulent police report completed by Ms. Vaussine following the incident on August 7, 2012. Named as defendants were Ms. Vaussine, Maxie Langley, CSE, and "Jon Doe." Mr. Vincent has represented himself during the entire pendency of these proceedings.

On February 6, 2013, Mr. Vincent filed a Supplemental Petition for Damages adding Tom Baldassari as a defendant. After discovery commenced, Mr. Vincent filed several motions: A Motion to Compel Responses; A Motion in Limine; a Motion to Nullify Defendant, Amanda Vaussine's Discovery Responses; a Motion to Compel Plaintiff Propounded Second Set of Interrogatories to Defendant, Amanda Vaussine; a Motion to Compel Plaintiff Propounded First Set of Interrogatories to Defendant, Tom Baldassari; and an Exparte [sic] Motion and Order to Serve Additional Interrogatories to and upon Defendant, Amanda Vaussine. These motions involved the issue of whether a party's attorney is allowed to sign discovery responses on behalf of his client when the client had executed the required verification.

A hearing was held on the various motions on September 17, 2013, wherein the trial court denied each of Mr. Vincent's motions and awarded Defendants sanctions for the unfounded motions. Mr. Vincent then filed a Notice of Intention to Apply for Writs of Certiorari, Prohibition and Mandamus and Motion and Order to Fix Time for Filing Writ Application on October 16, 2013. Mr. Vincent then filed a Motion and Order for New Trial on November 15, 2013, which was denied by the trial court. On January 22, 2014, Mr. Vincent filed another Notice of Intention to Apply for Writs of Certiorari, Prohibition and Mandamus and Motion and Order to Fix Time for Filing Writ Application. Mr. Vincent did not complete either writ application despite filing two Motions for Extension of Time to File Supervisory Writs with this court.

On January 31, 2014, Mr. Vincent filed a Motion for Leave to file another Supplemental Petition for Harassment and Defamation of Character seeking to add this matter to his claims against Defendants herein. A hearing was held on March 25, 2014, wherein the trial court denied the motion to file the supplemental petition. On April 21, 2014, Mr. Vincent filed Notice of Intention to Apply for

Writs of Certiorari, Prohibition and Mandamus and Motion and Order to Fix Time for Filing Writ Application in response to that ruling. This court upheld the trial court's ruling and denied Mr. Vincent's application for writs.

Mr.Vincent also filed a Motion for New Trial, which was later withdrawn after the matter was reassigned from Judge Robert Wyatt to Judge Sharon Darville Wilson.[1]

Mr. Vincent also filed a Petition for Nullity of Judgment on September 17, 2014, naming Judge Wyatt and counsel for Defendants as direct defendants, and alleging numerous accusations of biased behavior on their part as the basis for the nullity. Defendants filed a Motion to Strike Plaintiff's Petition for Nullity, a Motion to Revoke Plaintiff's Pauper Status for Abuse, and filed their own Motion for Summary Judgment seeking dismissal of Plaintiff's claims.

A hearing was held on the above filings on January 20, 2015, before Judge Wilson. After argument by the parties and a review of the record, Judge Wilson granted Defendants' Motion to Strike Plaintiff's Petition for Nullity, granted Defendants' Motion for Summary Judgment, and denied Defendants' Motion to Revoke Plaintiff's Pauper Status for Abuse.

Mr. Vincent then filed a Motion and Order for New Trial on January 20, 2015. Prior to the hearing on the motion for new trial, Mr. Vincent filed a Motion for Sanctions against Defendants' counsel, alleging fraudulent and scandalous wrongdoing on their part. After a hearing, Mr. Vincent's Motion for Sanctions was denied and stricken from the record due to its baseless nature and the Motion for New Trial was denied. Mr. Vincent then filed another Motion for New Trial on July 20, 2015, seeking a new trial from the denial of his prior Motion for New Trial, which was summarily denied without hearing.

---

[1] Judge Wyatt recused himself on his own motion, stating he "has a conflict due to the PLAINTIFF, Carol J. "CJ" Vincent, having become so upset and disgruntled with rulings by this court that he has become abusive to staff and this court's personnel; his discontent with this court has caused him to be totally un-objective with any adverse rulings to the point of disallowing this court to retain its objectivity."

On July 31, 2015, Mr. Vincent filed his first Motion and Order for Devolutive Appeal, which he subsequently withdrew. A second Motion and Order for Devolutive Appeal was filed on August 6, 2015. In this appeal, Mr. Vincent is seeking review of Judge Wilson's granting of Defendants' Motion for Summary Judgment and the denial of his Petition for Nullity.

## ANALYSIS

Louisiana Code of Civil Procedure Article 966(B) states that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." In *Boykin v. PPG Industries, Inc.*, 08-117, p. 4 (La.App. 3 Cir. 6/18/08), 987 So.2d 838, 842, *writs denied*, 08-1635, 08-1640 (La. 10/31/08), 994 So.2d 537, this court explained the standard of review applicable to motions for summary judgment, stating:

> Appellate courts review a trial court's grant or denial of a motion for summary judgment using the *de novo* standard of review, under the same criteria that govern the trial court's consideration of whether a summary judgment is appropriate in any given case. *Indep. Fire Ins. Co. v. Sunbeam Corp.*, 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226.

Because of the chilling effect on the exercise of free speech, defamation actions have been found particularly susceptible to summary judgment. *Kennedy v. Sheriff of E. Baton Rouge*, 05-1418 (La.7/10/06), 935 So.2d 669. Summary judgment, being favored in the law, is a useful procedural tool and an effective screening device to eliminate the unmeritorious defamation actions that threaten the exercise of First Amendment rights. *Id.*, at 686.

Mr. Vincent asserted causes of action for filing a false police report, for defamation per se, for intentional infliction of emotional distress, for intentional

tortious conduct and for malicious prosecution. All the above causes of action were connected to the filing of the police report by Ms. Vaussine. Although Mr. Vincent also named Maxie Langley, CSE and Tom Baldassari as defendants, it was only Ms. Vaussine who filed a police report in this matter.

In *Kennedy*, the Louisiana Supreme Court found when a private individual sues a nonmedia defendant over a defamatory statement about a matter of public concern, the claimant must establish malice, or fault, which is a lack of the reasonable belief in the truth of the statement giving rise to the defamation. In Louisiana, privilege is a defense to a defamation claim. The doctrine of privilege rests upon the notion that sometimes, as a matter of public policy, in order to encourage the free communication of views in certain defined instances, one is justified in communicating defamatory information to others without incurring liability. Privileged communications are divided into two general classes: (1) absolute; and (2) conditional or qualified. *Id.*

Absolute privileges exist for limited situations, such as statements by judges and legislators in judicial or legislative proceedings. This court in *Phillips v. Lafayette Parish School Board*, 10-373 (La.App. 3 Cir. 12/8/10), 54 So.3d 739, 744-45 (citations omitted), discussed conditional or qualified privilege:

> To determine whether the conditional or qualified privilege exists, "[f]irst, it must be determined whether the attending circumstances of a communication occasion a qualified privilege." Next, the court must determine whether the privilege was abused. Grounds for abuse are malice or lack of good faith.
>
> Qualified privilege exists when a possible criminal activity is reported to the proper authorities, provided that the report was made in good faith. Thus, where a private, non-public figure plaintiff brings an action against a private, non-media defendant who spoke on the matter of public concern (the report to law enforcement of suspected criminal activity), the defendant may assert qualified privilege as a defense.
>
> The privilege's effect is to rebut the allegations of malice or fault and to shift the burden of proof onto the plaintiff to establish abuse of the privilege. The plaintiff may establish the defendant's

abuse of the privilege by showing that the defendant either knew the matter to be false or acted in reckless disregard as to its truth or falsity. The showing of mere negligence is insufficient.

The court in *Kennedy*, 935 So.2d at 688, explained the meaning of "reckless disregard":

> While "reckless disregard" cannot be fully encompassed in one definition, the courts have provided some guidance on application of the standard. *Trentecosta*, 96-2388 at 14, 703 So.2d at 561, citing *St. Amant v. Thompson*, 390 U.S. 727,730, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968). For example, in *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964), the Supreme Court explained that only those false statements made with a high degree of awareness of their probable falsity meet the reckless disregard standard. In *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), the Supreme Court reiterated that reckless disregard requires a plaintiff to "prove that the publication was deliberately falsified, or published despite the publisher's awareness of probable falsity." *Id.*, 388 U.S. at 153, 87 S.Ct. at 1991. Finally, in *St. Amant v. Thompson*, supra, the Supreme Court explained that "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant*, 390 U.S. at 731, 88 S.Ct. at 1325. Under this standard, even proof of gross negligence in the publication of a false statement is insufficient to prove reckless disregard. *Davis v. Borskey*, 94-2399, p. 10 (La.9/5/95), 660 So.2d 17, 23, citing *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510, 111 S.Ct. 2419, 2429, 115 L.Ed.2d 447 (1991). Rather, there must be evidence that the defendant was highly aware that the statements were probably false. *Id.*

In this case, the facts establish that Ms. Vaussine made a statement to a police officer concerning what she believed could be criminal activity, thereby establishing a conditional privilege. Thus, it was Mr. Vincent's burden to prove that Ms. Vaussine made the statements to the police officer with reckless disregard for the truth of the statements made. Mr. Vincent failed to offer any proof claiming the statements made by Ms. Vaussine were false and malicious. No other proof, other than Mr. Vincent's assertions, was offered in support of those allegations against any of Defendants. As such the trial court was correct in granting summary judgment as to the claims of defamation and filing a false police report.

Mr. Vincent's claims of intentional infliction of emotional distress and intentional tortious conduct were also based on the filing of the police report. In order to recover for intentional infliction of emotional distress or intentional tortious conduct, a plaintiff must establish "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La.1991). Liability for intentional infliction of emotional distress does not attach where the defendant "has done no more than to insist upon his legal rights in a permissible way, even though he is aware that such insistence is certain to cause emotional stress." *Id.* at 1210. Similarly, liability cannot be based upon a privileged communication on a matter of public concern, a good faith report of a suspected or possible criminal act, as such reports should be encouraged as promoting the public interest in the suppression of crime and enforcement of the law.

Our de novo review of the record confirms that Mr. Vincent failed to meet his burden to establish any genuine issue of material fact tending to support a finding of extreme and outrageous conduct under the first element of the tort of intentional infliction of emotional distress. Ms. Vaussine was well within her rights to contact the police after she felt threatened by Mr. Vincent. The resulting report was a privileged communication made to the proper authorities. Therefore, summary judgment was properly granted on the claims of intentional infliction of emotional distress and intentional tortious conduct.

We also find no error in the grant of summary judgment relating to Mr. Vincent's cause of action for malicious prosecution. In a malicious prosecution action, there must be malice in fact. *Miller v. E. Baton Rouge Parish Sheriff's*

*Dep't.*, 511 So.2d 446 (La.1987). Defendants have adequately rebutted Mr. Vincent's conclusory allegations of malice, and Mr. Vincent failed to affirmatively put forth evidence on that element of his malicious prosecution claim sufficient to defeat summary judgment.

Mr. Vincent also contends the trial court erred in refusing to grant his Petition for Nullity seeking to annul the prior judgment issued by Judge Wyatt was erroneous. We disagree.

Beginning back in September of 2013, Mr. Vincent filed six separate district court pleadings relating to Defendants' discovery responses. The overriding assertion in these motions involved the issue of whether a party's attorney is allowed to sign discovery responses on behalf of their client. Mr. Vincent maintained counsel for Ms. Vaussine and Mr. Baldassari signed their discovery responses. Mr. Vincent refused to acknowledge or recognize that Ms. Vaussine and Mr. Baldassari executed the required verification. The discovery responses were then signed by counsel for Ms. Vaussine and Mr. Baldassari as required by La.Code Civ. P. art. 1420. Thus, the discovery responses contained therein are their responses.

Further, the issue was reviewed by Judge Wyatt previously, and, despite filing a notice to apply for writs, Mr. Vincent failed to timely complete the writ application to this court. The district court was correct in denying Mr. Vincent's Petition for Nullity and striking it from the record.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal area assessed to plaintiff-appellant, Carol J. Vincent.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2—16.3.