354 So.2d 1306 (1978)
Howard A. KIDDER, Plaintiff-Appellee-Respondent,
v.
Bob ANDERSON and Capital City Press, Inc., Defendants-Appellants-Relators.
No. 59988.
Supreme Court of Louisiana.
January 30, 1978.
Rehearing Denied March 2, 1978.
*1307 John G. Weinmann, Harvey D. Wagar, III, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for amici curiae.
Robert L. Kleinpeter, Kleinpeter & Nevils, Baton Rouge, for plaintiff-respondent.
F. W. Middleton, Jr., F. M. Coates, Jr., W. A. Abercrombie, Jr., Taylor, Porter, Brooks & Phillips, Baton Rouge, for defendants-applicants.
TATE, Justice.
The plaintiff Kidder sues a newspaper reporter (Anderson), and his employer-publisher to recover damages resulting from the publication of several newspaper articles and editorials. Kidder was Acting Chief of Police of Baton Rouge. He alleges damages caused him by defamatory articles depicting him, a law enforcement officer, as accepting payoffs and favors from barroom proprietors and gamblers, as interested in the operation of a house of prostitution in the 1950's, and as using the influence of his office for personal gain.
The trial jury awarded Kidder damages of $400,000. Reducing the award to $100,000, the court of appeal affirmed judgment in favor of Kidder. 345 So.2d 922 (La.App. 1st Cir. 1977).
On application of the defendants, we granted certiorari, 346 So.2d 1271 (1977), because we entertained doubt that the intermediate court had correctly applied the *1308 constitutional rule regulating recovery of damages by a public official claiming he had been defamed by criticism:
A public official may not recover damages for a defamatory statement, even if false, relating to his official conduct "unless he proves that the statement was made with `actual malice'that is, with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times Company v. Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964). Moreover, the public official plaintiff must meet this burden not merely by a preponderance of the evidence, but with "clear and convincing proof." Gertz v. Robert Welch, Inc., 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974). See also New York Times Company v. Sullivan, cited above, 376 U.S. 285-86, 84 S.Ct. 729.

(1)
As stated in New York Times Company v. Sullivan, cited above, 376 U.S. 279, 84 S.Ct. 725, the reason for the rule is that otherwise "would-be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expense of having to do so. They tend to make only statements which `steer far wider of the unlawful zone.'"
That opinion also noted, 376 U.S. 269, 84 S.Ct. 720, that the constitutional safeguard for freedom of expression "`was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people'" and that "`The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic, is a fundamental principle of our constitutional system.'"
As we ourselves recently reiterated in Mashburn v. Collin, 355 So.2d 879 (La. 1977): "`The stake here, if harassment succeeds, is free debate. One of the purposes of the Times principle, in addition to protecting persons from being cast in damages in libel suits filed by public officials, is to prevent persons from being discouraged in the full and free exercise of their First Amendment rights with respect to the conduct of their government. . . Unless persons, including newspapers, desiring to exercise their First Amendment rights are assured freedom from the harassment of lawsuits, they will tend to become self-censors.'"

(2)
In upholding an award, the court of appeal, with one judge dissenting, concluded: (a) that, reviewing the evidence (after trial on the merits), it was unable to find error in the apparent jury determination that the charges were false in fact;[1] and (b) that, since the information had been gathered from disgruntled police officers and persons whom the jury apparently found to be unreliable, the jury could reject good faith in publication and could find the malice test met, because "recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of the reports." St. Amant v. Thompson, 390 U.S. 727, 732, 88 S.Ct. 1323, 1326, 20 L.Ed.2d 262 (1968).

(3)
The error in the intermediate majority's reasoning is that the credibility of the publisher's informants must be judged, not *1309 on the basis of an evaluation of sworn testimony at a trial (after full opportunity to rebut accusations), but rather on the basis of information available to the reporter at the time of publication. St. Amant v. Thompson, cited above.
That police officers were disgruntled and antagonistic to their proposed chief is not necessarily an indication of their unreliability as informants. In fact, some of these very police officers now attacked as unreliable have often appeared as witnesses in criminal prosecutions by the state, with their credibility vouched for by officers of the state.
In St. Amant v. Thompson, cited above, the United States Supreme Court reversed this court's affirmance of a judgment for damages in a public official's defamation action. As in that case, the bias of the informant is not persuasive in determining malice, where the information has been obtained from an informant in a position to know the information published and where there is no clear and convincing evidence that the person publishing the information had any personal knowledge unequivocally indicating the unreliability of his informant.
With regard to the reliability of the information conveyed by these police officers, the criterion is not whether they were motivated by selfish reasons to furnish the derogatory information. Rather, it is whether or not they were in a position to obtain the information furnished by them, and whether or not the report they conveyed was so inherently improbable as to create indisputable doubt as to its authenticity. St. Amant v. Thompson, cited above.
Again, having attacked the police officer information as suspect on the ground of bias, the plaintiff also suggests that the newspaper reporter improperly relied upon information conveyed to him (and corroborated by written statements obtained from them) from gamblers and barmaids as to payoffs or bribes.
We are unable to accept the inference that, therefore, the reporter should not have relied upon information as to bribery conveyed by them. Just as the state is rarely in a position to rely upon the testimony of church wardens and Sunday-school teachers to prove criminally corrupt activities by public officials, so newspaper investigation of reports of corruption must often obtain first-hand corroboration from those present in the barrooms or gambling houses, rather than from citizens who spend their time only at home, in church, or at work in less colorful occupations.
On the merits, substantial evidence, of police officers and others, indicates factual circumstances which might give rise to an inference of impropriety on the part of Kidder during his long police career, despite the recognition of his merit by his steady advance to the highest ranks of the police force. Nevertheless, we find no reason to reject the jury's apparent finding that, despite these indications of impropriety (indications perhaps unavoidably arising from police association, in order to obtain information of law-violation, with persons on the fringes of crime), Chief Kidder was a reliable police officer throughout his career, with plausible explanations and denials for the various incidents of alleged impropriety involved.

(4)
The issue, however, is not the ultimate falsehood of the defamatory statements. It is, rather, whether a newspaper reporter and publisher uttered them with actual malice, i. e., with reckless disregard of whether they were false or not.
In each instance, the published statements were based upon interviews, generally corroborated by written statements taken at the time, with individuals in an apparent position to know of the factual accuracy of the information conveyed.
The record discloses no reason for Anderson or his publisher to doubt the trustworthiness of the information received by them and subsequently published.
We do not find persuasive the contention that malice is shown because the mayor *1310 appointing Kidder, a very able, honest, and well-respected official, advised the local media that he had investigated rumors concerning Kidder prior to this appointment and, on the basis of his investigation, found no basis for the charges. The mayor's information, based on his investigation, was essentially irrelevant to the present query, in the absence of any indication that it gave the defendants substantial reason to doubt the authenticity of information gathered by their own different and possibly more detailed investigation, nor the veracity of the sources (including the police officers) relied upon by them.
The endorsement of an appointee by his superior cannot be said to constitute reason to silence the publication of charges based on sources whom the publisher has no other reason to disbelieve. To accept the plaintiff's position might well be to immunize from public discussion the prior conduct of persons whom highly placed officials, upon appointing them, endorse as without blemish based upon the appointing official's investigation, however thorough he deems it.
Accordingly, we find that the plaintiff Kidder, a public official, has not proved by clear and convincing evidence that the defamatory statements written and published by the defendants, although false, were done so with actual malicethat is, either with actual knowledge of the falsity of the reports published, or else with reckless disregard of whether or not they were false. Having failed to meet this constitutional requirement for recovery of defamation damages by a public official, the plaintiff Kidder's suit must be dismissed.

(5)
Additionally, we find that the motion for summary judgment was improperly denied.
In support of the motion, the defendants made essentially the same showing as was outlined above: that each piece of information was obtained, usually in writing before publication, from police officers and others with first-hand knowledge in a position to report the information given.
As we recently stated in Mashburn v. Collin, cited above at 355 So.2d 879: "In cases affecting the exercise of First Amendment liberties, proper summary judgment procedure is essential. . . . Summary adjudication may be thought of as a useful procedural tool and an effective screening device for avoiding the unnecessary harassment of defendants by unmeritorious actions which threaten the free exercise of rights of speech and press."
The dissenting judge in the court of appeal correctly observed, 345 So.2d 948: "* * * the burden placed upon a plaintiff in defeating a motion for summary judgment [in a freedom of expression case] is a most severe and difficult challenge to meet, though not impossible. He cannot merely allege malice or reckless disregard, nor hope to prove malice by questioning the defendant or defendant's witnesses. Where in the ordinary type of case he could be successful in defeating the motion by only putting forth a minimum of evidence, here he confronts the guarantees of the First and Fourteenth Amendments, and thus stands the risk of the motion being successful if he cannot at this stage of the proceedings show that he can produce sufficient evidence on the trial that will prove with `convincing clarity' the defendant's malice. Stated another way, I am convinced that the single thread that is woven throughout this entire fabric is that in order for plaintiff to be successful on the threshold issue of summary judgment, he must come forth with strong evidence, convincingly clear evidence, that the defendant either know the statements published were false or that he had reckless disregard of whether they were false or not. Otherwise, if plaintiff is allowed to escape summary judgment by simply a minimum showing, he has thus effectively invoked the `chilling effect' of trial doctrine."

Decree
For the foregoing reasons, we reverse the judgment in favor of the plaintiff public *1311 official and against the defendant newspaper reporter and publisher, and we dismiss the plaintiff's suit for defamatory damages, at his cost.
REVERSED AND RENDERED.
SUMMERS, J., dissents.
DIXON, J., dissents with reasons.
CALOGERO, J., dissents and assigns reasons.
DIXON, Justice (dissenting).
I respectfully dissent.
Mashburn v. Collin, 355 So.2d 879 (La. 1977), cited so frequently in the majority opinion, has almost nothing to do with the issues here presented. To cite the Mashburn case so frequently can only perpetuate the confusion demonstrated in First Amendment cases. Mashburn involved the right of a food critic to describe his opinion of a restaurateur's cooking. This case involves the execution by a newspaper of its deliberate and well-proved intention to destroy the reputation of a public official by reporting, as factual allegations, charges which were based on little more than gossip.
The majority opinion is also in error in its appreciation of the burden of proof. There is no finding that the jury was improperly instructed. There is substantial evidence to support the finding of the jury. The majority almost says the jury was right and the newspaper wrong, but the jury had evidence before it which the paper had not obtained before publication.
All the evidence before the jury was available to the paper before it printed the articles about its victim. I cannot say the jury was wrong when it found as a fact that the paper acted with actual malice (reckless disregard of the truth) in printing allegations which were proved to be false. The evidence adduced at trial must be viewed in the light most favorable to the verdict. Cape Publications, Inc. v. Adams, Fla.App., 336 So.2d 1197 (1976), cert. den. ___U.S.___, 98 S.Ct. 440, 54 L.Ed.2d 305 (1977); Alioto v. Cowles Communications, Inc., 519 F.2d 777 (1975), cert. den. 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 259 (1975).
For the reasons detailed by the Court of Appeal, I would affirm.
CALOGERO, Justice (dissenting).
I would affirm the judgment of the Court of Appeal which let stand a trial court defamation judgment while reducing it from $400,000 to $100,000. The Court of Appeal properly applied the law. They held plaintiff to the burden of proving "actual malice," New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), with "clear and convincing proof." Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).
Accordingly, I dissent.
NOTES
[1] Although we do not intend to make a detailed review of the evidence, we note that the court of appeal wrongly attributed to Dr. Moody an expression of vindictiveness towards Mr. Kidder, 345 So.2d 937, whereas the quote from Tr. 1577 (stenographic page 159), is actually part of the testimony of Kidder's brother-inlaw (following stenographic page 158, Tr. 1541), James McBride. The latter here attempts to explain a basis for very damaging information he had furnished to Anderson and a police officer assisting Anderson in his investigation. No reason whatsoever is shown for doubting the reliability of the information furnished by Dr. Moddy.