527 So.2d 407 (1988)
Roy Clensy BATES, Sr.
v.
The TIMES-PICAYUNE PUBLISHING CORP., Ashton Phelps, Jr., Charles A. Ferguson, Fritz Harsdorff, and Ellis Lucia.
No. CA-9217.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1988.
*408 Rutledge C. Clement, Jr., Amelia J. Williams, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for defendants/appellees.
Wanda Jane Warmack, Law Offices of Ferdinand J. Kleppner, Metairie, and Romualdo Gonzalez, Murray, Braden, Gonzalez and Richardson, New Orleans, for plaintiff/appellant.
Before BYRNES, CIACCIO and LOBRANO, JJ.
LOBRANO, Judge.
Plaintiff, Roy Bates, Jr., appeals the dismissal of his defamation suit against the Times-Picayune Publishing Corp.,[1] on a motion for summary judgment.
The evidence submitted with respect to the motion for summary judgment shows the following facts. On September 2, 1980 the New Orleans Police Department, in an attempt to arrest one Gregory Nunnery, was met with an angry crowd at the Desire Housing Project. During the course of this disturbance Bates confronted the police in an attempt to have his son released from their custody. As a result of his actions, Bates was arrested and placed in a police car.
While he sat in the police unit he was photographed by a photographer for the Times-Picayune. On September 3, 1980 an article entitled "Angry Crowd Forces Police Out of Desire Housing Project" appeared in the Times-Picayune. In conjunction with that article, Bates' photograph was published with the caption "Gregory Nunnery, 23, Suspect Arrested in Desire Project." The article contained no reference to Bates or his arrest.
In Bates' deposition he admits he was arrested, and that the facts in the news article were correct. However, he asserts this defamation claim based on the caption appearing below his photograph which suggests that he is Nunnery.
The photographer, Ellis Lucia, stated in his affidavit that he did photograph Bates while being detained in the police unit. He attempted to identify the subject of the photograph by questioning on the scene police officers, but no officer would make an identification. He further stated that "information was later obtained by the Times-Picayune from the New Orleans Police Department." Based on that information, the photograph was published.
*409 Upon learning from Bates of the misidentification, the Times-Picayune printed a correction. This is the only time Bates' name appeared in the newspaper in connection with the incident.
Without assigning written reasons, the trial judge granted defendants' motion for summary judgment. Bates perfects this appeal asserting various errors. Specifically, he urges that he is not a "limited public figure" and therefore he is not required to prove malice as per New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). He further urges that there exists a material issue of fact regarding whether the Times-Picayune is entitled to a privilege for the publication, and whether it (the photograph and caption) demonstrate a reckless disregard for the falsity of the publication. He also urges these same arguments with respect to the individual defendants, as well as an individual duty owed by each.
We affirm.
Summary judgment is appropriate when there is no genuine issue of material fact and mover is entitled to judgment as a matter of law. La. C. C.Pro. Art. 966. It is designed to dispose of frivolous demands and defenses. Schaefer v. Lynch, 406 So. 2d 185 (La.1981). The party moving for a summary judgment has the burden of showing there is no issue of fact, and all doubt and inferences will be resolved in favor of the party opposing the motion. Mashburn v. Collin, 355 So.2d 879 (La. 1977). The motion may be supported or opposed by affidavits, interrogatories and depositions. However, the adverse party cannot merely rely on the allegations or denials in his pleadings. La.C.C.Pro. Arts. 966, 967.
It is generally recognized in Louisiana that in a defamation claim, the plaintiff must prove (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied and (5) injury as a result thereof. Cangelosi v. Schwegmann Bros Giant Super Markets, 390 So.2d 196 (La.1980); Corcoran v. New Orleans Firefighters Association, 468 So.2d 648 (La.App. 4th Cir.1984), writ denied, 470 So.2d 881 (La.1985). The issue of First Amendment guarantees versus the recognized common law right of recovery for defamation has been the subject of many U.S. Supreme Court cases, beginning with New York Times v. Sullivan, supra. In Sullivan, the Court held that a public official could not recover for defamation unless he proves by clear and convincing evidence that the statement was made with knowledge of its falsity, or with reckless disregard of whether it was false or not.
Subsequent cases expanded the Sullivan rule to include comments about public figures, Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), and all matters of public concern. Rosenbloom v. Metromedia, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971).[2] In Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Court recognized a "limited purpose public figure" as one who voluntarily injects himself into a public controversy and thus is required to meet the Sullivan burden of proof. However, the court determined that the petitioner (Gertz) did not fall into that category, and held that:
"... so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." 418 U.S. at 347, 94 S.Ct. at 3010.
Thus the Gertz court recognized the right of each State to set its own standards with respect to defamatory actions brought by private individuals as long as "strict liability" was not imposed.[3] Even though both parties argue the issue of whether Bates is a "limited public figure," for purposes of our discussion we resolve the doubt in Bates' favor and assume he is not. Thus, *410 our holding is premised on Bates being a private individual.
As previously noted, Louisiana cases have recognized malice (actual or implied) as an element of a cause of action for defamation. We believe that requisite, in cases of private individuals, should more properly be termed "fault". All Louisiana tort law is premised on the principles established in Civil Code Article 2315; that is, fault, causation and damage. See, Wattigny v. Lambert, 408 So.2d 1126 (La.App. 3rd Cir.1981), writ denied 410 So.2d 760 (La. 1981). As suggested by this Court in Munson v. Gaylord Broadcasting Co., 491 So.2d 780 (La.App. 4th Cir.1986), writ denied 496 So.2d 335 (La.1986), although malice may be an example of fault, it (malice) is not essential to the defamation cause of action. See also, Acme v. Better Business Bureau, 225 La. 824, 74 So.2d 43 (La.1954). However, as argued by Bates, some false statements may be so outrageous as to be "defamatory per se", thus precluding the necessity of proving fault. Munson, supra. See also, Trahan v. Ritterman, 368 So.2d 181 (La.App. 1st Cir.1979). Although the "defamatory per se" argument could be considered strict liability in contravention of Gertz, we need not address that issue because we conclude the misidentification of Bates' photograph does not fall within this category. The article and accompanying photograph do not mention Bates' name, nor do they falsely accuse him of anything. As a matter of law, we hold that the innuendo resulting from the misidentification is not so outrageous as to be defamatory per se.
Thus, in order for Bates to be successful, he must prove some fault by the defendants. In this context Bates argues that the defendant failed to verify the photograph with an official spokesperson of the New Orleans Police Department, or with Bates himself, prior to publication. In essence, he asserts an issue of fact exists with respect to this question of fault.
The Times Picayune argues they relied on the information given them by the New Orleans Police Department and there was no reason for them to suspect the information was in error. Their reliance was justified, they argue, especially when considering the absence of other alternatives on their part.
The affidavit of the photographer establishes the fact that the New Orleans Police Department identified Nunnery as the person arrested. It also establishes that the Picayune sought information on the scene, but were unsuccessful. Bates' deposition establishes the fact that the photographer did not speak with him prior to the publication. The deposition also establishes that Bates was placed in custody at the scene of the incident, and placed in the police unit.
In Wilson v. Capital City Press, 315 So.2d 393 (La.App. 3rd Cir.1975), writ refused 320 So.2d 203, the plaintiff was identified in a news article as having been arrested on drug charges. The information was obtained from the public relations director of the Louisiana State Police. It was false. There was no explanation as to how the mistake was made. The newspaper, upon learning of the mistake, printed a retraction. In reversing the trial court's award to plaintiff for defamation, the Third Circuit, concluded "... we do not think that the paper was under any duty to so verify the information in this case." Id. at 398. "The source was reliable and in a proper position of authority and knowledge such that no fault can be attributed [to the paper] for reliance on the information received." Ibid. A similar result was reached in Francois v. Capital City Press, 166 So.2d 84 (La.App. 3rd Cir.1964) where the publisher relied on a log book of the Louisiana State Police.
Bates argues that these cases require that the information must come from an "official police source or report". However, in Kidder v. Anderson, 354 So.2d 1306 (La.1978), our Supreme Court reversed a lower court award in favor of a "public official" against the defendant newspaper. The information which formed the basis of the publication in that case was obtained from "disgruntled" police officers who were "antagonistic" to their chief (the plaintiff). The court noted that "... the publisher's informants must be judged not *411 on the basis of an evaluation of sworn testimony at trial ... but rather on the basis of information available to the reporter at the time of publication." Id. at 1308, 1309.
We cannot accept Bates' argument that the information source must have "official" stamped on it, or come from the "official spokesperson" of the police department before it can be relied on by the newspaper. Although the Court in Kidder analyzed the source of the publisher's information in the context of whether or not actual malice (i.e. reckless disregard of the truth) was present, we believe their criteria should apply in cases involving the private individual. The test should be whether, under the facts and circumstances existing at the time the reporter receives his information, the reporter is made aware or placed on guard as to possible error. That is, the reporter should not rely on information from a source which he knows, or which he should reasonably believe, is suspect or unreliable. In those circumstances, he would owe a duty to investigate further.
It is undisputed that the Times-Picayune received their information from the police department. There is no countervailing affidavit or deposition to refute this. Further investigation by the photographer would have revealed that Nunnery had in fact been arrested that day. The police arrest reports would have revealed this, and the "official" police spokesperson (whoever that may be) would have confirmed it. It is reasonable to assume that the photographer was not able to speak with Bates while he was in custody in the police unit, and, in all probability, the only way the error could have been discovered prior to publication would have been to compare Nunnery to the photo. Nunnery was incarcerated at the time, and it would be unreasonable to require the photographer to visit Parish prison and make such a comparison, absent any indication that there was an error. To require further investigation under the circumstances of this case would create the often referred to "chilling effect" on the exercise of First Amendment rights. See, Bill Partin Jewelry Inc. v. Smith, 467 So.2d 188 (La.App. 3rd Cir.1985).
We conclude there is no issue of fact concerning the source of the information, and under this factual scenario, there can be no fault on the part of the Times-Picayune. Appellant to pay all costs of this appeal.
AFFIRMED.
NOTES
[1] Also named defendants are certain individual officers and employees of the newspaper.
[2] An excellent chronology of the development of the Sullivan rule is set forth in Mashburn v. Collin, 355 So.2d 879 (La.1977).
[3] Gertz also prohibits an award of punitive damages except on a showing of actual malice.