# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 07-1409


**PAUL ORTEGO**

**VERSUS**

**ELDRIDGE HICKERSON, ET AL.**


**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 66,791-B
HONORABLE THOMAS F. FUSELIER, DISTRICT JUDGE

**********

**JOHN D. SAUNDERS**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, John D. Saunders, and Glenn B. Gremillion, Judges.

**REVERSED.**

**Allen Bruce Rozas**
**Rozas and Rozas**
**P. O. Drawer 280**
**Mamou, LA 70554**
**(337) 468-5271**
**Counsel for Plaintiff/Appellee:**
**Paul Ortego**

**Katherine G. Eckert**
**Long Law Firm, LLP**
**4041 Essen Lane, Ste 500**
**Baton Rouge, LA 70809**
**(225) 922-5110**
**Counsel for Defendants/Appellants:**
**Darnall, Sikes, Gardes & Frederick**
**Steve Moosa**

**SAUNDERS, Judge.**

This is a case involving claims brought forth by the former executive director of a housing authority board against, amongst others, a CPA firm for, *inter alia*, defamation of character. The Plaintiff alleged that a member of the CPA firm made false statements about him accusing him of criminal activity.

Based on this allegation, the Plaintiff contended that the member of the CPA firm had committed defamation *per se* with truth being the only defense available. As such, the Plaintiff filed a Motion for Partial Summary Judgment on the issue of liability. In response, the Defendants filed their own Motion for Summary Judgment. In their motion they alleged that the defamation *per se* standard did not apply to the Plaintiff as he was a public official, and that the plaintiff could not prove that the member of the CPA firm had made the statements with the applicable standard of actual malice.

The trial court granted the Plaintiff's Motion for Partial Summary Judgment in regards to liability under the defamation *per se* standard. Further, the trial court denied the Defendants' Motion for Summary Judgment. Defendants have appealed.

We reverse the trial court in both granting the Plaintiff's Motion for Partial Summary Judgment and in denying the Defendants' Motion for Summary Judgment. The Plaintiff's claims against the Defendants are dismissed with prejudice and the Plaintiff is cast with all costs of this appeal.

**FACTS AND PROCEDURAL HISTORY:**

From 1992 to 2004, the plaintiff, Paul Ortego (hereinafter "Ortego"), was the Executive Director of the Ville Platte Housing Authority (hereinafter "VPHA"). In 2001, in an open and public meeting, the VPHA, acting under the advice of its housing consultant, voted to create a separate, non-profit corporation, Alternative

Living Solutions (hereinafter "ALS"). After providing start up funds to ALS, the board of the VPHA agreed to serve on the board of ALS. Thereafter, ALS was discussed periodically at the VPHA board meetings.

ALS was successful in obtaining a written, but conditional, commitment from the Louisiana Housing Finance Agency of a grant of $400,000.00 to build an apartment complex. The condition to the grant was that ALS had to obtain all additional funds to complete the project from other sources prior to using any of the grant's funds. ALS was never able to do so and had to notify the La. Housing Finance Agency that it would not be accepting the $400,000.00 grant.

In 2004, Ortego was not renewed as Executive Director of the VPHA board. However, Ortego continued to be the Executive Director of ALS.

ALS was successful in obtaining funding of another project and used some of those funds to repay the start up money given to it by the VPHA. When the payment by ALS to the VPHA was received, it raised questions from the current VPHA board members about the nature of the relationship between the VPHA and ALS, as that current VPHA board consisted of new board members rather than those that sat on the board that created ALS.

Due to the VPHA board's concerns, it contacted Darnell, Sykes, Gardes & Fredrick (hereinafter "DSG&F"), a corporation of certified public accountants to perform agreed-upon procedures relating specifically to transactions between the VPHA and ALS. DSG&F issued its report on June 28, 2004, and presented its findings to the VPHA board at the August 5, 2004, meeting. The results of agreed-upon procedures prompted the board to ask DSG&F to perform an audit for the fiscal year ending in June 2004. DSG&F's audit was completed on October 22, 2004, and

presented to the VPHA board by Steve Moosa, a CPA working for DSG&F, at its March 2, 2005, regular meeting.

In the following excerpt from the record, "Chairman" and "Grant" are the same person, Grant Soileau. "Steve," "Moosa," "Steve Moosa," and "S.Moosa" are all Steve Moosa of DSG&F. "Daniel" and "Arvie" are VPHA board member Daniel Arvie, and "A.Frank" is a member of the VPHA board. At the March 2, 2005, meeting, the following recorded statements were made[1]:

> Grant. . . . With Alternative Living Solution with them still owing the housing authority money on the next audit will that be a finding.
> Steve. . . . "NO" as long as you report it, we reported the situation, and "NO" I don't perceive as a finding, I think, we are the right thing by reporting it, no determine at some point it is now collectable, we will have to write it off.
>
> I don't, if you all got any further information on the situation once we figure it out whether you will be the component unit of the housing authority that's one thing, then you can show as an advance, that's fine then we can collect once things get rolling with it, but if not and you have no control then it will be dissolved and then. . . . . . .
>
> Grant. . . .But in HUD eyes this would be fraud and miss use of funds.
> Steve. . . .It is
> Daniel. . . . .It is
> Steve. . . . . .
> But it was miss represented by the previous director, and I think HUD has been made aware of it. And by us reporting it yes the next report we will disclose it, and if we find that they wouldn't get appointment, that internee will be dissolved and not by the housing authority and you can still proceed with collection but it not collected once it is turned over to collectable.
> Daniel. . . . .So in words you are saying if its is not resolved by next year, it can still be another finding as long as it still showing.
> Steve. . . Yes
> . . .
> Steve Moosa (Long discussion). . .go that route.
> Chairman:   Pleasure of the Board?
> (cell phone rings)
> Arvie:      Uh, so well you was the auditor, you audited last year and this year and when you gave your brief, in so many words,

---

[1]All spelling and grammatical errors are left in context as they appear in the record.

|          |                                                                                      |
|----------|--------------------------------------------------------------------------------------|
|          | like say, the previous director, really was like theft compared to our records, our reports and how it was discovered. |
| S.Moosa: | It was misappropriation, mis, mis-understanding. |
| Arvie:   | Fraud, like fraud. |
| A.Frank: | Yeah, it was. |
| S.Moosa: | Basically that's what we're showing. . . |
| Chairman: | Pleasure of the board? |
| Arvie:   | Uh, we was our legal advisor, I'd like to take action, uh |
| Chairman: | Motion? |
| Arvie:   | Motion, moved |
| Chairman: | File lawsuit? |
| Arvie:   | File lawsuit |
| Chairman: | And theft? |
| Arvie:   | And theft. |
| Chairman: | Any second |
| A.Frank: | I do. |
| Chairman: | Seconded |
| Chairman: | (inaudble). . . .legal advisor (inaudible). . . . . . to file theft charges against person responsible. |
| Arvie:   | On Mr. Paul Ortego, ex-executive director. |
| Chairman: | All in favor |
| Arvie:   | Aye, move |
| (Unanimous) | |
| Arvie:   | It still know (sic) I'm going to jail . . .it's not my money. |

A reporter from the local newspaper, the *Ville Platte Gazette*, was present at this meeting. The reporter apparently misconstrued what was said by the board members and Moosa at the meeting and reported, in the March 6, 2005, edition of the newspaper, that Ortego had potentially stolen $400,000.00.

Ortego initially filed suit against DSG&F, and several other defendants, none of which were the *Ville Platte Gazette*, on March 11, 2005, in the thirteenth Judicial District Court for the Parish of Evangeline. Ortego's initial suit was found to be premature as he filed his suit against DSG&F, a CPA firm, without first filing a request for a public accountant review panel, as required under La.R.S. 37: 101, *et. seq*.

After his initial action was found premature, Ortego then requested such a

4

panel as the law required. The review panel opined that Moosa did not breach the applicable standard of care required of a CPA, as charged by Ortego in his request for review.

On January 10, 2007, Ortego filed this suit through a Petition for Damages for Slander. This petition named Moosa and DSG&F as defendants (Moosa and DSG&F hereafter "the Defendants"). On August 1, 2007, Ortego filed a Motion for Partial Summary Judgment on liability contending that the Defendants committed slander *per se*. On August 24, 2007, the Defendants filed their own Motion for Summary Judgment asserting that the defamation *per se* standard was not applicable to public officials such as Ortego and that Ortego lacked the factual support to prove all of the elements necessary to recover for his defamation action.

Both motions were set for hearing before the trial court on September 13, 2007. The trial court granted Ortego's Motion for Partial Summary Judgment based upon its concern for what Moosa had said, according to the recording submitted as evidence that the statements were made. Further, the trial court, because it granted Ortego's Motion, reasoned that it had to deny the Defendants' motion, and did so. Defendants applied for supervisory writs, but their application to this court was denied because the judgment they were seeking review of was a final judgment and, therefore, appealable. After learning of the denial of their writ application, the Defendants filed this appeal, alleging four assignments of error.

**ASSIGNMENTS OF ERROR:**

1.  Did the trial court err in granting Ortego's Motion for Partial Summary Judgment because the defamation *per se* standard is not applicable to the instant matter?

2.  Did the trial court err in denying the Defendants' Motion for Summary Judgment because the Defendants demonstrated in their motion that Ortego

will not be able to establish the essential elements of a defamation cause of action at trial?

3. Did the trial court err in granting Ortego's Motion for Partial Summary Judgment because the court considered evidence not properly before it?

4. Did the trial court err in granting Ortego's Motion for Partial Summary Judgment because he failed to demonstrate that a conditional privilege did not apply or was abused in the instant matter?

**ASSIGNMENT OF ERROR #1:**

Defendants allege that the trial court erred in granting Ortego's Motion for Partial Summary Judgment because the defamation *per se* standard is not applicable to the instant matter. We agree.

Appellate courts conduct a *de novo* review of rulings on motions for summary judgment.

> It is well established that a summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.

*Palma, Inc., v. Crane Servs. Inc.*, 03-614 (La.App. 3 Cir. 11/5/03), 858 So.2d 772, 774 quoting *Shelton v. Standard 700/Associates*, 01-587, p.5 (La. 10/16/01), 798 So.2d 60, 64-65; La.Code Civ.P. art. 966.

Louisiana Code Civil Procedure Article 966 was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. . . . The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art 966(A)(2).

In 1997, Article 966(C)(2) was enacted to further clarify the burden of proof in summary judgment proceedings. It reads as follows:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is

6

before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

The Louisiana Supreme Court, in *Kennedy v. Sheriff of East Baton Rouge*, 05-1418, pp. 4-5 (La. 7/10/06), 935 So.2d 669, 674-75 (citations omitted), stated:

[A] statement is defamatory if it tends to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person, or otherwise expose the person to contempt or ridicule. In Louisiana, defamatory words have traditionally been divided into two categories: those that are defamatory per se and those that are susceptible of a defamatory meaning. Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, without considering extrinsic facts or circumstances, are considered defamatory per se. When a plaintiff proves publication of words that are defamatory per se, falsity and malice (or fault) are presumed, but may be rebutted by the defendant.

However, the United States Supreme Court in *New York Times v. Sullivan*, 376 U.S. 254, 279-280, 84 S.Ct. 710 (1964)(emphasis added), stated:

The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with ***"actual malice"*** — *that is, with knowledge that it was false or with reckless disregard of whether it was false or not.*

Therefore, "[t]he Constitution delimits a State's power to award damages for libel in actions brought by public officials against critics of their official conduct." *Id.*, 376 U.S. at 283, 84 S.Ct. at 727. As such, our Louisiana Supreme Court, in *Davis v. Borskey*, 94-2399, pp. 10-11 (La.9/5/95), 660 So.2d 17, 23, stated the following:

A public official plaintiff cannot recover for a defamatory statement

7

relating to his or her official conduct, even if false, unless the public official proves actual malice by clear and convincing evidence. *Kidder v. Anderson*, 354 So.2d 1306, 1308 (La.1978). At the very least, the public official plaintiff must prove that the defendant published the false statement with a high degree of awareness of its probable falsity. *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209, 215, 13 L.Ed.2d 125 (1964); *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991); *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667, 109 S.Ct. 2678, 2686, 105 L.Ed.2d 562 (1989). Or the public official plaintiff must prove that "the defendant in fact entertained serious doubts as to the truth of the publication." *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968).

Even if a public official plaintiff demonstrates that a defendant was grossly negligent in publishing false statements, that showing is insufficient to prove that the defendant acted with reckless disregard for the truth. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. at 510, 111 S.Ct. at 2429. Instead, a public official plaintiff must clearly prove that the defendant actually knew the published statements were false or that the defendant was highly aware that the statements were probably false.

When discussing whether a person was a public official, the United States Supreme Court, in *Rosenblatt v. Baer*, 383 U.S. 75, 85, 86 S.Ct. 669, 676 (1966) (footnote omitted), stated, "the 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs."

Here, Ortego was the Executive Director of the VPHA. Under La.R.S. 40:539 (C)(1), "The authority shall select a secretary who shall be the executive director and chief executive and administrative officer of the authority. He shall serve at the pleasure of the authority. The authority shall fix the compensation of the executive director." It is clear to this court that Ortego, as Executive Director of the VPHA had "substantial responsibility for or control over the conduct of governmental affairs" as stated in *Rosenblatt*, and, therefore, should be treated as a public official.

8

Given the above, the trial court should have ascertained whether, based upon the evidence before it, the only reasonable conclusion a trier of fact could make was that Ortego clearly and convincingly proved that Moosa actually knew the published statements were false, or that he was highly aware that his statements were probably false or that he had serious doubts as to the truth of his statements. The burden on Ortego to have done so cannot be understated.

We note that at trial, notwithstanding the heightened level of proof needed to secure a summary judgment, even if Ortego clearly and convincingly proved that Moosa was grossly negligent in making false statements about him, that would still be insufficient to prove that he acted with reckless disregard for the truth.

Accordingly, the trial court's ruling granting Ortego's motion for partial summary judgment is reversed because the defamation *per se* standard is not applicable to the instant matter.

**ASSIGNMENT OF ERROR #2:**

The Defendants claim that the trial court erred in failing to grant their Motion for Summary Judgment when Ortego failed to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial on a defamation cause of action. We agree.

Our Supreme Court, in *Trentescosta v. Beck*, 96-2388, p. 10 (La. 10/21/97), 703 So.2d 552, 559. (Citations omitted.), stated the following:

> Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name. Four elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. Thus a plaintiff, in order to prevail in a defamation action, must prove "that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages."

We will address whether Ortego can prove that Moosa made the relevant statements with "actual malice" because all four of the elements listed above must be shown. If any one of the elements is found to be lacking, the cause of action fails. *Costello v. Hardy*, 03-1146 (La. 1/21/04), 864 So.2d 129.

Our Louisiana Supreme Court, in *Tarpley v. Colfax Chronicle*, 94-2919 (La. 2/17/95), 650 So.2d 738, found that no reasonable person could find the evidence put forth by a public official plaintiff could prove clearly and convincingly that a newspaper printed an anonymous letter with actual malice or reckless falsity. In *Tarpley*, a newspaper published an anonymous letter alleging that the plaintiff, the District Attorney for Grant Parish, was guilty of official misconduct.

To this court, the record in *Tarpley* contained a plethora of evidence that the newspaper and its editor likely had a state of mind close to that necessary for the plaintiff to recover for defamation of character. The plaintiff had clearly demonstrated that the defendants had a history of writing and publishing editorials that criticized the plaintiff's performance as District Attorney. Further, the newspaper's open hostility towards the plaintiff was evident by the newspaper's choice to print a recall petition wherein it urged its readers to get others to sign the petition and mail it to the chairman of the recall drive. Finally, the newspaper did not charge persons that printed advertisements made by the editor's family members and certain staff at the newspaper that encouraged the recall of the plaintiff.

Despite the evidence present in *Tarpley*, our Supreme Court stated the following when overturning this court:

> The actual malice standard is not satisfied merely through showing ill will or "malice" in the ordinary sense of the word. Moreover, actual malice may not be inferred from evidence of personal spite, an intention to injury, or a bad motive. Rather, at the very least, actual malice requires

10

that the statement was made with a reckless disregard for the truth. To establish a reckless disregard for the truth, the defamation plaintiff must show that the false publication was made with a "high degree of awareness of probable falsity" or the defendant "entertained serious doubt as to the truth of his publication.

The evidence submitted by Mr. Tarpley in opposing the motion for summary judgment may support Mr. Tarpley's position that the publication was false and that the newspaper and its editor lacked objectivity and were not particularly fond of Mr. Tarpley. However, this evidence does not show that the editor or anyone else at the newspaper knew that the publication was made with knowledge that it was false or with reckless disregard for the truth. Since Mr. Tarpley was unable to produce evidence of sufficient quality and quantity to demonstrate that he likely will be able to meet his burden of proof at trial, summary judgment was appropriate.

*Id*. at 740. (Citations omitted.)

Here, like in *Tarpley*, because Ortego is a public officer, he must prove that Moosa made the statements knowing they were false, or that he was highly aware that they were probably false, or that he had serious doubts as to whether they were true. Ortego submitted no such evidence.

The evidence submitted by Ortego, even if we look in a light most favorable to him, could at most prove that Moosa said something that was not true regarding Ortego and that Moosa's statements helped prompt the VPHA board to pass a motion to bring charges against him. In fact, Steve Moosa, in his deposition had the following exchange:

Q:     - - HUD - - it's your understanding of HUD, a Housing Authority cannot - - I'll use the word sponsor - - cannot sponsor a non-profit corporation in the Housing Authority by giving it start-up monies?

A:     From my understanding, no.


Q:     It cannot.

A:     That is right.


Q:     Even though the board members are the same on the non-profit as the Housing, so giving it alter ego, that would still not be - -

A:     As far as I understand - -

11

Q: As far as you know - -

A: As far as I understand, I wouldn't think. I would get approval from HUD first.

Q: You wouldn't think that would be okay?

A: In my opinion, no.

This exchange suggests that Moosa did not have the requisite state of mind necessary to reach the actual malice standard. Rather, this exchange shows that Moosa felt he was merely stating his opinion of how HUD likely would react to the VPHA board creating and loaning ALS start up funds. Moosa's statements regarding his state of mind as to the why he made the statements about Ortego at the meeting are never controverted by Ortego.

The strongest evidence that Ortego could point to in his effort to avoid summary judgment is the following exchange that took place in Moosa's deposition:

Q: But when Mr. Arvie started talking about the theft motion, you specific - - you were an observer, he specifically addressed you. He specifically told you, I'm saying, in so many words, based on what I read for you, it sounds like, looks like theft. Okay? And rather than steer him awry, you, I would say, string this thing by saying it was misappropriation.

A: Probably I should have expounded upon what was going on, but I was trying to be brief. And I probably just said a few words. And, yes, I probably should have went on and more, said you all need to be more careful, and do this. . . .

At worst, this exchange tends to show that Moosa may have been negligent in failing to limit the consequences of the statements he made regarding Ortego. Such a result falls far short of being able to clearly and convincing prove, i.e. that Moosa made the statements knowing they were false, that he was highly aware that his statements were probably false, or that he has serious doubts whether they were true.

None of the evidence submitted by Ortego goes towards proving that Moosa made the statements with actual malice. Rather, throughout Moosa's deposition,

counsel for Ortego attempted to prove that Moosa made the statements and that he should not have made those statements. While it can be argued that a reasonable person might find that Moosa made the statements and could find that he should not have made those statements, it is equally clear that there is no evidence in the record to suggest that he made those statements with actual malice.

Moreover, nothing in the quoted statement and nothing in the record contradicts Moosa's statement that he was only expressing his opinion as to how HUD would interpret the situation to the board. In order to show that there is a genuine issue of material fact that would preclude the Defendants from successfully obtaining their Motion for Summary Judgment, Ortego must show evidence that he can carry the applicable burden of proving Moosa's actual malice. He has failed to do so. Thus, it is clear that Ortego would not be able to carry his burden of proof under the *Tarpley* standard and that Defendants are entitled to a judgment as a matter of law.

Accordingly, we reverse the trial court's finding denying Defendant's Motion for Summary Judgment. As such, we grant Defendants' Motion and dismiss Ortego's claims against them, with prejudice.

**ASSIGNMENTS OF ERROR #3 and #4:**

Defendants claim, in Assignment of Error #3, that the trial court erred in granting plaintiff's motion for partial summary judgment because the trial court considered evidence not properly before it. Further, in Assignment of Error #4, Defendants allege that the trial court erred in granting Ortego's motion for partial summary judgment because plaintiff failed to demonstrate that a conditional privilege did not apply or was abused in the instant matter. Both of these assignments are pretermitted.

We held, in Assignment of Error #1, that the trial court misapplied the law in

13

relying on the defamation *per se* standard in a suit involving Ortego, a public official plaintiff. Further, we held in Assignment of Error #2 that the Defendants' motion for summary judgment is granted. As such, Ortego's claims against the Defendants were dismissed with prejudice regardless of whether the evidence was improperly admitted and regardless of whether Moosa's statements were conditionally privileged in regards to the trial court granting Ortego a partial summary judgment. As such, both assignments are moot.

**CONCLUSION:**

We reverse the trial court's granting Ortego's Motion for Partial Summary Judgment in regards to liability. Further, we reverse the trial court's denial of the Defendants' Motion for Summary Judgment. The other two assignments of error raised by the Defendants are moot. As such, Ortego's claims against the Defendants are dismissed with prejudice. All costs of this appeal are to be paid by Ortego.

**REVERSED.**